LOWY, J.
**111 Following an argument with her boyfriend, the defendant set a bag of his clothes on fire inside their apartment, then fled the building without calling for help or warning the occupants of other units. One person died in the resulting two-alarm fire. Three others, including two firefighters, were injured. A Superior Court jury convicted the defendant of arson of a dwelling house, G. L. c. 266, § 1 ; felony-murder in the second degree, G. L. c. 265, § 1 ; and two counts of injuring a firefighter, G. L. c. 265, § 13D1/2. The defendant appealed, and we granted her application for direct appellate review.
The defendant raises several challenges to the arson conviction, which served as the predicate for the other charges: that the evidence was insufficient to prove that she specifically intended to set the apartment building on fire; that the trial judge erred, as a matter of law, in instructing the jury on an "alternative theory" of arson, namely, that she also could be found guilty if she accidentally or negligently set the fire and then wilfully and maliciously failed to extinguish or report it; and that the Commonwealth expressly waived the right to pursue that alternative theory by its response to her pretrial motion for a bill of particulars. Moreover, she challenges the conviction of felony-murder in the second degree on the ground that the judge declared, as a matter **112 of law, that arson is an inherently dangerous felony, rather than letting the jury determine whether her conduct evidenced a conscious disregard for the risk to human life. Finally, the defendant argues that the verdicts should be vacated and the indictments dismissed because the Commonwealth declined her request to instruct the grand jury regarding the elements of the offenses.
The parties, both in the trial court and on appeal, have treated the charge of arson under G. L. c. 266, § 1, as a specific intent crime. As discussed herein, however, arson under § 1, which is derived from the common law, is a crime requiring general intent with malice. We accordingly *1135 provide an appendix containing a model jury instruction for arson of a dwelling house under G. L. c. 266, § 1, which has been unanimously approved and recommended by this court.[1]
Concerning the defendant's claims on appeal, we conclude that the evidence, viewed in a light most favorable to the Commonwealth, was sufficient to establish that she specifically intended to burn the apartment building. The court unanimously agrees that the instruction on the alternative theory of arson was erroneous, and a majority concludes that the error, whether it is viewed for prejudice or for a substantial miscarriage of justice, does not warrant overturning the verdicts. As there also is no merit to the defendant's other arguments, the verdicts are affirmed.
Background. The facts developed at trial are as follows. On December 24, 2010, the defendant was living in a ground-floor unit of a two-story apartment building in Chelsea with her boyfriend, William Brewer, and their two year old son. Early that evening, the defendant dropped their son off to spend the night at a relative's home, arriving back at the apartment at approximately 9 P.M. Immediately upon the defendant's return, she and Brewer engaged in a heated argument that resulted in Brewer leaving for a nearby bar. Approximately one hour later, he returned and found that the defendant, still angry, had locked him out of the apartment. From the sidewalk outside, Brewer spoke to the defendant through a window and attempted to calm her down and persuade her to let him in. Being unsuccessful in both regards, Brewer departed again, this time looking to buy marijuana.
Approximately fifteen minutes later, Brewer returned again. This **113 time, as he approached the building, he observed the defendant running out of the building. When he asked her what she was doing, she responded that his clothes were on fire. The defendant had lit a piece of paper on fire and tossed it on a duffel bag full of Brewer's clothes, which was sitting on the floor in a corner of the apartment. She had then changed out of her night clothes and left, locking the exterior door of the building behind her,[2] and without calling for help or alerting other occupants. As she then stood outside arguing with Brewer about what she had done, flames were already visible inside through one of the apartment windows. *1136 As the two argued, a passing car came to a halt, and a woman and three men jumped out. The woman immediately used her cellular telephone to call 911. She then asked what had happened, and the defendant replied that she had set Brewer's clothes on fire. Meanwhile, one of the men, believing that Brewer had said there were children inside, attempted to enter the building. He broke down the locked exterior door, only to find that the fire had already become so intense that it was not safe to go inside.
While this was occurring, a man and a woman who occupied the unit directly above that of the defendant attempted to leave the building using the interior staircase, but the fire had already rendered it impassable. Trapped on the landing at the top of the stairs, they began shouting for help and taking turns trying to breathe through a small window. The man, his upper body already covered in burns, squeezed through the window and jumped to the street **114 below, suffering a broken ankle and spinal fracture in the process. The woman, meanwhile, remained trapped on the second floor until firefighters located her, unconscious; she died of smoke inhalation and thermal injuries. Two firefighters also were injured.
The woman who had called 911 confronted the defendant. The defendant again stated that she had set Brewer's clothes on fire, and added that she was angry that he had left without her to purchase drugs.[3] She also stated that it was not the first time she had done something like this. She destroyed personal items belonging to Brewer on several prior occasions after the two had argued. She had even set a bag of his clothes on fire once before, but Brewer quickly managed to extinguish the fire.
Through the cross-examination of witnesses at trial, the defendant challenged whether the Commonwealth could prove beyond a reasonable doubt either that she set the fire or, if she did, that she did so with the specific intent to burn the dwelling. She also called one witness, a forensic psychologist, who opined that the defendant suffered from low cognitive functioning and posttraumatic stress disorder (PTSD)[4] that "quite likely" impaired her ability to fully appreciate and understand the consequences of her acts as compared to the average person. He further opined, however, that she had the capacity to appreciate the wrongfulness of her conduct and to conform her conduct to the requirements of the law at the time she set the fire (i.e., she was, in his opinion, criminally responsible for her conduct).[5]
At the close of evidence, the jury considered charges of arson of a dwelling house; felony-murder in the second degree; murder in the second degree based on malice; involuntary manslaughter;
**115 and two counts *1137 of injuring a firefighter.[6] As to all charges, the jury were instructed on the options of finding the defendant not guilty or not guilty by reason of lack of criminal responsibility. The jury found the defendant guilty of arson, felony-murder in the second degree, and injuring the two firefighters.[7]
Discussion. 1. Intent necessary to prove arson. "Few areas of criminal law pose more difficulty than the proper definition of the mens rea required for any particular crime." United States v. Bailey, 444 U.S. 394, 403, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). As the present case makes clear, this is true for the crime of arson of a dwelling house under G. L. c. 266, § 1, concerning at least whether a conviction requires proof of specific or general intent and whether a conviction can be secured against someone who accidentally or negligently sets a fire and then wilfully and maliciously fails to extinguish or report it. We use this opportunity to clarify those issues.
The "venerable distinction at common law between general and specific intent has been the source of a good deal of confusion" (citations and quotations omitted). Commonwealth v. Gunter, 427 Mass. 259, 268, 692 N.E.2d 515 (1998), S.C., 456 Mass. 1017, 924 N.E.2d 687 (2010) and 459 Mass. 480, 945 N.E.2d 386, cert. denied, 565 U.S. 868, 132 S.Ct. 218, 181 L.Ed.2d 119 (2011). As noted, the parties here have treated arson under G. L. c. 266, § 1, as a specific intent crime, requiring proof that the defendant not only "consciously intended to take certain actions, but that [s]he also consciously intended certain consequences." Id. at 268, 692 N.E.2d 515. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 268-269 & n.12, 692 N.E.2d 515 (discussing distinction between common-law concepts of "general" and "specific" intent). To date, we have not had occasion to address squarely whether G. L. c. 266, § 1, requires proof of specific intent.
"As with all matters of statutory interpretation, we look first to the plain meaning of the statutory language.... Where the language is clear and unambiguous, it is to be given its 'ordinary meaning.' ... Of course, this meaning must be reasonable and supported by the purpose and history of the statute" (citations and **116 quotations omitted). Commonwealth v. Mogelinski, 466 Mass. 627, 633, 1 N.E.3d 237 (2013). To secure a conviction for arson in this case, the statute required proof that the defendant "wilfully and maliciously set[ ] fire to, burn[ed], or cause[d] to be burned ... a dwelling house." G. L. c. 266, § 1. To establish that the defendant acted with a culpable state of mind, therefore, required proof that she acted "wilfully and maliciously."[8]
Although our jurisprudence has not addressed whether arson requires specific intent, we have had occasion, in arson and nonarson cases alike, to consider the meaning of the terms "wilfully" and "maliciously."
*1138 Recently this court, interpreting another statute, noted that the term "wilfully" has not been defined consistently in either dictionaries or across our jurisprudence. See Millis Pub. Schools v. M.P., 478 Mass. 767, 775-776, 89 N.E.3d 1170 (2018) (in context of analyzing statute that forbids wilfully failing to attend school, noting that some dictionaries and appellate decisions focus on actor's purpose, others on whether actor's conduct was voluntary or intentional). At its core, however, it "means intentional and by design in contrast to that which is thoughtless or accidental." Commonwealth v. McGovern, 397 Mass. 863, 868, 494 N.E.2d 1298 (1986) (wilful and malicious destruction of property). For purposes of arson, malice "comprises only three components .... 'The wilful doing of an unlawful act without excuse is ordinarily sufficient to support the allegation that it was done maliciously and with criminal intent.' " Commonwealth v. Dung Van Tran, 463 Mass. 8, 26, 972 N.E.2d 1 (2012), quoting Commonwealth v. McLaughlin, 431 Mass. 506, 513 n.6, 729 N.E.2d 252 (2000).[9] Although both "malicious" and "wilful" require that a person act intentionally, the definitions shed no light **117 on whether the statute requires specific or general intent.[10]
It is true that in certain nonarson cases we have suggested that "[c]onduct is wilful when the actor intends both the conduct and its harmful consequences." Commonwealth v. Schuchardt, 408 Mass. 347, 352, 557 N.E.2d 1380 (1990) (wilful and malicious destruction or injury of personal property, dwelling house, or building of another under G. L. c. 266, § 127 ). See Commonwealth v. McDonald, 462 Mass. 236, 242, 967 N.E.2d 1101 (2012) (considering term "wilfully" in criminal harassment statute, G. L. c. 265, § 43A ). Here, a specific intent instruction was requested by both parties and utilized by the trial judge.[11] Yet, such an interpretation has never been squarely adopted for § 1.
*1139 In Dung Van Tran, 463 Mass. at 12, 27, 972 N.E.2d 1, the defendant was charged with arson after he poured gasoline in such a manner that it landed on himself and two others, as well as on the floor of the apartment, and then ignited it. He argued that the evidence established, at most, that he intended to burn himself and that the resulting burning of the apartment was accidental. Id. at 26, 972 N.E.2d 1. This court disagreed and concluded that the evidence was sufficient for the jury to "have found, consistent with the [trial] judge's supplemental instruction on [wilfulness], that the defendant intended not **118 only his conduct, i.e., lighting the fire, but also the resulting harm, which ... was the burning of the apartment" (quotations omitted). Id. at 27, 972 N.E.2d 1. Although the supplemental instruction clearly required a finding of specific intent, Dung Van Tran was a sufficiency of the evidence case. It did not involve a challenge to the propriety of the supplemental instruction or consider whether proof of specific intent is required for a conviction of arson.
Ultimately, although " 'willful' may have several meanings when read in isolation, its meaning in any particular statute may be determined from examining the act itself as well as the larger statutory scheme." Franklin Office Park Realty Corp. v. Commissioner of the Dep't of Envtl. Protection, 466 Mass. 454, 463, 995 N.E.2d 785 (2013). Accordingly, we view the term "wilfully" in the context of the broader phrase "wilfully and maliciously," as used historically in the crime of arson.
"At common law the offence of arson consisted of the wilful and malicious burning of the house of another" (citation omitted). Commonwealth v. Lamothe, 343 Mass. 417, 419, 179 N.E.2d 245 (1961). See A. F. Curtis, A Treatise on the Law of Arson § 57, at 71 (1936) (Curtis); W. R. LaFave, Criminal Law § 21.3, at 1365 (6th ed. 2017). The same common-law language -- wilfully and maliciously -- appears in the current version of § 1, enacted in 1932. See St. 1932, c. 192, § 1.[12] The same language also appeared in every predecessor version of § 1, dating back more than two hundred years. See, e.g., St. 1784, c. 58, § 1; R.S. (1836) c. 126, §§ 1 - 2 ; Pub. St. 1882 c. 203, § 1; Rev. L. c. 208, § 1 (1902) ; G. L. c. 266, § 1 (1921) ; G. L. (Ter. Ed.) c. 266, § 1. Quite simply, the crime of arson in Massachusetts, including the requirement that a defendant have acted "wilfully and maliciously," has deep roots, and, as this court has previously acknowledged, to ascertain the meaning of the words in § 1, "we must turn to the common law, for the statute was undoubtedly drawn against that background." Lamothe, 343 Mass. at 419, 179 N.E.2d 245 ). See Commonwealth v. DeCicco, 44 Mass. App. Ct. 111, 127, 688 N.E.2d 1010 (1998) (common-law understanding *1140 of **119 arson was "engrafted in § 1").[13]
Common-law arson has been widely acknowledged as a crime of general intent. See, e.g., People v. Nowack, 462 Mich. 392, 406, 614 N.W.2d 78 (2000) ("Common-law arson is a general intent crime"); Linehan v. State, 476 So.2d 1262, 1265 (Fla. 1985) (same); Veverka v. Cash, 318 N.W.2d 447, 450 (Iowa 1982) (same); United States v. Doe, 136 F.3d 631, 635 (9th Cir. 1998), cert. denied, 526 U.S. 1041, 119 S.Ct. 1338, 143 L.Ed.2d 502 (1999) (same); United States v. Acevedo-Velez, 17 M.J. 1, 2-3 (C.M.A. 1983) (same). See also D.A. Dripps, R.M. Boyce & R.M. Perkins, Criminal Law and Procedure, at 383 (13th ed. 2017) ("if without justification, excuse or mitigation, one sets a fire which obviously creates an unreasonable fire hazard for another's dwelling, which is actually burned thereby, the result is common-law arson even if this was not an intended consequence"); W.R. LaFave, Criminal Law, supra at § 21.3(e), at 1375-1376 (common-law arson involved either "intentional[ly] burning" dwelling house of another or "intentionally doing an act [e.g., starting a fire or burning his own premises] under circumstances in which the act created a very high risk of burning the dwelling house of another, where the actor knew of that risk but nonetheless engaged in the risk-taking act"); R.M. Perkins, Criminal Law, at 175 (1957) (state of mind required for common-law arson, "assuming ... there are no circumstances of justification, excuse or mitigation, is either an intent to burn the dwelling of another, or an act done under such circumstances that there is obviously a plain and strong likelihood of such a burning").
In other jurisdictions where the "wilful and malicious" language was adopted by statute or code, courts have uniformly followed the common law and interpreted the language as setting forth a general intent crime. This is true at the State level, see, e.g., State v. Scott, 118 Ariz. 383, 385, 576 P.2d 1383 (Ct. App. 1978) ; People v. Atkins, 25 Cal. 4th 76, 84-85, 104 Cal.Rptr.2d 738, 18 P.3d 660 (2001) ; Linehan, 476 So.2d at 1264-1265, State v. O'Farrell, 355 A.2d 396, 398 (Me. 1976) ; State v. Doyon, 416 A.2d 130, 135 (R.I. 1980) ; at the federal level, see Doe, 136 F.3d at 634-635 (interpreting 18 U.S.C. § 81 );
**120 United States v. M.W., 890 F.2d 239, 240-241 (10th Cir. 1989) (same); and even under the code of military justice, see Acevedo-Velez, 17 M.J. at 7 (interpreting art. 126 of Uniform Code of Military Justice).
By contrast, in jurisdictions where arson has been declared a specific intent crime, the statutes have been drafted or amended to achieve that end. For example, in Wyoming, the statute was drafted to provide that a "person is guilty of first-degree arson if he maliciously starts a fire or causes an explosion with intent to destroy or damage an occupied structure" (emphasis added). Keats v. State, 64 P.3d 104, 107 (Wyo. 2003), quoting Wyo. Stat. Ann. § 6-3-101(a). There, the court held that the statute "can be categorized as a 'specific intent' crime." Id. In Maryland, the statute is still drafted in a form akin to that of the common law, see Md. Code Ann., Criminal Law, § 6-102 (LexisNexis 2012), but the Legislature has expressly defined "maliciously" as "acting with intent to harm a person or property," ibr.US_Case_Law.Schema.Case_Body:v1">id. at § 6-101(c), and "willfully" as "acting intentionally, knowingly, *1141 and purposefully," ibr.US_Case_Law.Schema.Case_Body:v1">id. at § 6-101(e). See Holbrook v. State, 364 Md. 354, 371, 772 A.2d 1240 (2001) (given "the plain language used to define 'maliciously' and 'wilfully,' we conclude that the Legislature intended for arson to be a specific intent crime"). Contrast DeBettencourt v. State, 48 Md. App. 522, 523-524, 532, 428 A.2d 479 (Md. Ct. Spec. App. 1981), cert. denied, 290 Md. 713 (1981) (prior version of Maryland arson statute containing no definitions of "wilfully" and "maliciously," followed common law intent).
Here, the Legislature has given no indication in more than two hundred years that it intended to deviate from the common-law general intent requirement for the crime of arson. Moreover, if the Legislature had intended to require specific intent, it would have used more explicit language as it has in other criminal statutes, including a provision involving burning of insured property. See G. L. c. 266, § 10 ("Whoever, wilfully and with intent to defraud or injure the insurer, sets fire to ..." [emphasis added] ); G. L. c. 265, § 18 (b ) ("Whoever, being armed with a dangerous weapon, assaults another with intent to rob or murder..." [emphasis added] ). We conclude, therefore, that proof of general intent with malice is all that is required.
To be sure, § 1 is still far from being some form of strict liability offense. Requiring malice "ensures that the act is done with a design to do an intentional wrongful act without any legal justification, excuse or claim of right.... [The] willful and malice **121 requirement ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire" (quotations and citations omitted). Atkins, 25 Cal. 4th at 88, 104 Cal.Rptr.2d 738, 18 P.3d 660. See Commonwealth v. Ely, 388 Mass. 69, 74, 444 N.E.2d 1276 (1983) ("requirement that the act be wilful eliminate[s] accidental or negligent fires" from reach of statute). See also Curtis, supra at § 2, at 3 (throughout arson's long history "distinction between intentional and accidental fires has always been maintained, the latter never forming a basis for a criminal prosecution").
Moreover, we conclude that, even in the absence of proof that a defendant acted purposefully to set fire to or burn some portion of a dwelling house, the intent element of § 1 still may be satisfied by proof that a reasonable person in the defendant's position would have known that there was a plain and strong likelihood that some portion of a dwelling house would be set on fire or burned. See, e.g., Atkins, 25 Cal. 4th at 89, 104 Cal.Rptr.2d 738, 18 P.3d 660 (incendiary act must be committed "under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure"); Nowack, 462 Mich. at 408-409, 614 N.W.2d 78 (act done in "circumstances where a plain and strong likelihood of [the burning of a dwelling house] exists").
2. Sufficiency of the evidence. In this case, we conclude that the evidence was overwhelming that the defendant acted with general intent and malice for purposes of arson under G. L. c. 266, § 1, when she set fire to a bag of clothes located on the floor inside an apartment for the purpose of exacting revenge against her boyfriend. Because the defendant described her conduct and motivation to more than one person immediately after she left the apartment building, we can say for certain that the fire was not the product of an accident or negligence. It was set intentionally, without justification or excuse, and for an unlawful or injurious purpose or motive. Moreover, a reasonable *1142 person, under those circumstances, would have known that there was a plain and strong likelihood that some portion of the apartment building would be set on fire or burned.
To the defendant's benefit, the jury were not instructed that arson was a general intent crime. Instead, the trial judge instructed that there were two alternative theories by which the Commonwealth could prove that the defendant acted with specific intent for purposes of satisfying the mens rea requirement for arson under G. L. c. 266, § 1, which we shall refer to as the **122 specific intent theory and the failure to extinguish or report theory.
The defendant argues that, even viewed in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 676-677, 393 N.E.2d 370 (1979), the evidence was insufficient to establish that she had the specific intent to burn the apartment building, not just Brewer's clothing. We disagree.
The arson statute, by its plain terms, does not require extensive damage to the dwelling house -- e.g., that it be "consumed" or "destroyed" by fire. See Commonwealth v. Tucker, 110 Mass. 403, 404 (1872). It requires proof only that some portion of the dwelling house actually was on fire or burned. Id. The mere charring of some portion of the dwelling house is sufficient. See Commonwealth v. McIntosh, 10 Mass. App. Ct. 924, 925, 412 N.E.2d 917 (1980). Although specific intent requires proof that the defendant intended her conduct and its consequences, it does not require proof that the consequences she intended were as extensive as those realized (i.e., that the apartment building be consumed or destroyed by the fire). Rather, specific intent requires only that the consequences she intended are among those covered by the statute (i.e., that some portion of the apartment building actually be set on fire or burned).[14] See Gunter, 427 Mass. at 269 n.12, 692 N.E.2d 515 ("in a specific intent crime, the defendant must intend that the particular consequences constituting the crime follow from his act or conduct"). See also Curtis, supra at § 62, at 78-79 ("not necessary that the burning effected correspond precisely with the intent or design of the accused").
The evidence, viewed in the light most favorable to the Commonwealth, established that the defendant, in a fit of anger, intentionally lit a piece of paper on fire and threw it on a pile of Brewer's clothes that were located on the floor inside the apartment. A reasonable jury could infer from this evidence alone that the defendant was aware that her actions would result in the burning of not only Brewer's clothing, but also some portion of the apartment building. See Dung Van Tran, 463 Mass. at 27, 972 N.E.2d 1 (where defendant poured gasoline in such manner that it got not only on himself but also on other people and on living room floor of apartment, jury could reasonably infer he was aware when he ignited it that he would do more than simply light himself on **123 fire); Commonwealth v. Martinez, 393 Mass. 612, 613-615, 473 N.E.2d 167 (1985) (defendant who lit newspaper on fire inside tenement building and threw it at another occupant, thereby igniting fire, guilty of arson); Commonwealth v. Roy, 2 Mass. App. Ct. 14, 16, 307 N.E.2d 851 (1974) (defendant who lit apartment curtains on fire after fighting with roommate, resulting in fire, guilty of arson). *1143 After setting the fire, the defendant left without attempting to extinguish the fire or call for help. The evidence, when viewed in the light most favorable to the Commonwealth, further established that she locked the exterior door of the building as she left, thereby making it more difficult for anyone to escape or to enter and attempt to extinguish the fire. Therefore, the jury reasonably could have inferred that the defendant acted with the requisite specific intent at the time she set the fire. See, e.g., Dung Van Tran, 463 Mass. at 27-28, 972 N.E.2d 1 (defendant's failure to attempt to put out fire or to sound alarm was further proof of his intent to burn apartment); Commonwealth v. Cavedon, 301 Mass. 307, 314-315, 17 N.E.2d 183 (1938) (jury could reasonably infer defendants intended to commit arson from their failure to make any effort to extinguish fire or sound alarm).
"We are mindful that in arson cases the Commonwealth often can prove guilt only by a web of circumstantial evidence that entwines the suspect in guilt beyond a reasonable doubt" (citation and quotation omitted). Choy v. Commonwealth, 456 Mass. 146, 150, 927 N.E.2d 970, cert. denied, 562 U.S. 986, 131 S.Ct. 425, 178 L.Ed.2d 330 (2010). Here, that web was sufficiently woven.
3. Instruction on failure to extinguish or report fire. Before trial, the defendant filed a motion for bill of particulars to determine whether the Commonwealth's theory of liability was based on her having set the fire, having failed to extinguish or warn of the fire after she started it, or both. At the subsequent hearing, the Commonwealth represented that its theory was based on the setting of the fire, not the failure to act after the fire was set. Based on that representation, the motion judge, who was not the trial judge, endorsed the motion as follows: "Upon hearing, the Commonwealth representing that it will proceed on a theory of 2nd degree felony murder, the underlying felony being the crime of arson by intentionally setting fire to or within an occupied dwelling, further particulars are not required."
At trial, the Commonwealth largely abided by its prior representation. During the trial, the Commonwealth filed a proposed jury instruction on arson that focused on the defendant's intent at **124 the time the fire was set and made no mention of failing to extinguish or report a fire. Later, it filed a final set of requests proposing essentially the same instruction. While arguing in opposition to the defendant's motion for a required finding of not guilty, the Commonwealth restated that the theory of liability was that the defendant intentionally set the apartment building on fire, and that any evidence that she failed to extinguish or report the fire was relevant insofar as it reflected on her intent at the time she set the fire.[15]
However, during the charge conference, the trial judge, without prompting from the Commonwealth, suggested she was inclined based on the evidence to provide the jury with a supplemental instruction that, in its final form, stated as follows:
"If an act is accidental, it is not a crime; that is, the requirement of willfulness means that accidentally or negligently caused burnings are not arson. However a person may have the required intent for arson if he or she negligently or accidentally causes a fire and then willfully *1144 and maliciously makes no attempt to extinguish it or to report it. In that circumstance, the necessary criminal state of mind for arson, willfulness and maliciousness, may be formed after the fire starts."[16]
The Commonwealth agreed and requested that the supplemental instruction be given. The defendant objected, arguing that the Commonwealth had waived the right to seek such an instruction, and that, in any event, there was insufficient evidence to justify providing it. Although the Commonwealth did not specifically argue in closing that the defendant's failure to report or extinguish the fire constituted arson, the judge provided the supplemental instruction. For the first time, the defendant argues that the supplemental instruction was improper because G. L. c. 266, § 1, does not criminalize the wilful and malicious failure to extinguish or report an accidentally or negligently set fire. We agree.
The statute, in pertinent part, makes it unlawful for a person to "wilfully and maliciously set[ ] fire to, burn[ ], or cause[ ] to be **125 burned ... a dwelling house." G. L. c. 266, § 1. There is nothing in this plain language that suggests that a person is culpable for accidental or negligent conduct. See Mogelinski, 466 Mass. at 633, 1 N.E.3d 237 (court looks to plain language of statute to ascertain legislative intent). Indeed, accidentally or negligently set fires cannot form the basis for arson under G. L. c. 266, § 1. Moreover, there is nothing on the face of the arson statute to suggest that a person is liable for failing to act after accidentally or negligently setting fire to, burning, or causing to be burned a dwelling house. Therefore, the supplemental instruction was erroneous.[17]
The Commonwealth suggests that the statute criminalizes the wilful and malicious failure to extinguish or report an accidentally or negligently set fire through the inclusion of the words "burns" and "causes to be burned." However, the Commonwealth does not direct us to any authority that has interpreted those words in that fashion.
Moreover, had the Legislature intended for the statute to cover acts or omissions committed after a fire is accidentally or negligently set, it is evident from the language used in other arson-related statutes that it knew how to do so. See G. L. c. 266, § 7 ("Whoever by wantonly or recklessly setting fire to any material, or by increasing a fire already set, causes injury to, or the destruction of, any growing or standing wood of another shall be punished"); G. L. c. 266, § 8 ("Whoever, not being a tenant thereof, sets or increases a fire upon land of another whereby the property of another is injured, or whoever negligently or wilfully suffers any fire upon his own land to extend beyond the limits thereof whereby the woods or property of another are injured, shall be punished"); G. L. c. 266, § 9 ("Whoever ... sets a fire on land which is not owned or controlled by him and before leaving the same neglects to entirely extinguish such fire, or whoever wilfully or negligently sets a fire on land which is not owned or controlled by him whereby property is endangered or injured, or whoever wilfully or negligently *1145 suffers a fire upon his own land to escape beyond the limits thereof to the injury of another, shall be punished");. Notably, the relevant language in each of these statutes was in effect when § 1 was amended in 1932 to provide **126 as it does today. See, e.g., G. L. c. 266, §§ 7, 8, as amended through St. 1912, c. 419, §§ 1, 2; G. L. c. 266, § 9, inserted by St. 1897, c. 254, §§ 1, 2.
Furthermore, even if we were to conclude that the words "burns" and "causes to be burned" are ambiguous, the rule of lenity applies to a criminal statute and "requires that the defendant receive the benefit of the ambiguity." Commonwealth v. Dayton, 477 Mass. 224, 226, 75 N.E.3d 600 (2017).
The Commonwealth cites a trio of cases, two of which appear to have served as the impetus for the supplemental instruction at issue. Given the plain language of G. L. c. 266, § 1, the cases do not advance the Commonwealth's cause.
In Commonwealth v. Cali, 247 Mass. 20, 141 N.E. 510 (1923), the defendant was not charged with arson but with burning insured property with intent to defraud. At that time, G. L. c. 266, § 10, provided, in pertinent part, that "[w]hoever, with intent to injure the insurer, burns a building ... belonging to himself or another, and which [is] at the time insured against loss or damage by fire, shall be punished by imprisonment in the state prison for not more than twenty years."[18] See G. L. c. 266, § 10 (1923). Cali appealed and claimed that, at most, the evidence established that the fire was accidental. Cali, supra at 247 Mass. at 25, 141 N.E. 510. The court disagreed, stating, "[I]f he merely neglected in the emergency of the moment to act, his negligence was not proof of a purpose to commit the crime charged. The intention, however, to injure could be formed after as well as before the fire started.... [H]is immediate departure from the premises ... , without giving any alarm, warranted the inference of a criminal intent or state of mind, that the building should be consumed." Id. The court also stated that there was no error in the jury instruction:
"If a man does start an accidental fire what is his conduct in regard to it? A question might arise -- as if after the fire has started accidentally, and he then has it within his power and ability to extinguish the fire and he realizes and knows that he can, and then he forms and entertains an intent to injure **127 an insurance company, he can be guilty of this offense. It is not necessary that the intent be formed before the fire is started." (Emphasis added)
Id. at 24-25. This holding does not aid the Commonwealth's argument because G. L. c. 266, § 10, unlike G. L. c. 266, § 1, did not require that the defendant act "wilfully and maliciously." Moreover, the intent element required under § 10, unlike under § 1, was the intent to injure an insurance company, i.e., an intent that theoretically could be formed after the fire was accidentally set.
In Commonwealth v. Glenn, 23 Mass. App. Ct. 440, 443-445, 503 N.E.2d 39 (1987), the defendant appealed from his conviction under G. L. c. 266, § 1, arguing that the jury were erroneously provided with a modified version of the jury instruction from the Cali case recited supra. The Appeals Court agreed, concluding that the modified instruction "did not follow the *1146 language in the Cali case [and] failed to make clear that either the setting of the fire or the failure to extinguish or report it had to be intentional and not merely negligent." Id. at 444, 503 N.E.2d 39. In Glenn, however, the defendant did not argue, nor did the court discuss, whether the Cali instruction was appropriate in a case charging arson under G. L. c. 266, § 1.
Finally, in Commonwealth v. Levesque, 436 Mass. 443, 444-447, 766 N.E.2d 50 (2002), this court considered whether the defendants, who had started a fire in an abandoned warehouse by accidentally knocking over a lit candle, could face involuntary manslaughter charges in connection with the death of several firefighters based on the defendants' failure to take adequate steps either to control or report the fire. After noting that "[i]t is true that, in general, one does not have a duty to take affirmative action," id. at 449, 766 N.E.2d 50, we concluded that "where one's actions create a life-threatening risk to another, there is a duty to take reasonable steps to alleviate the risk. The reckless failure to fulfil this duty can result in a charge of manslaughter." Id. at 450, 766 N.E.2d 50. See id. at 453, 766 N.E.2d 50 (to prove recklessness there need only be proof "that the defendant's choice not to report the fire was intentional, not that the fire was intentionally set").
In Levesque, however, we were interpreting the crime of involuntary manslaughter, the elements of which are derived from the common law. Id. at 447-448, 766 N.E.2d 50. The defendants were not charged with arson, which is defined by statute. And although G. L. c. 266, § 1, has its roots in the common law and we look to **128 that law when necessary to ascertain the meaning of its language, the plain language of the statute still prevails.
Thus, it was error to provide the supplemental instruction on arson.
We next consider whether, as the defendant argues and dissent believes, the error in the jury instruction requires a new trial. Although the defendant objected at trial to the supplemental instruction, she did not do so on the grounds raised here. "It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any" (citation omitted). Commonwealth v. Torres, 420 Mass. 479, 482-483, 651 N.E.2d 360 (1995). See Mass. R. Crim. P. 24 (b), 378 Mass. 895 (1979) ("No party may assign as error the giving [of] ... an instruction unless he objects thereto before the jury retires to consider its verdict, specifying the matter to which he objects and the grounds of his objection"). The objection, therefore, was not preserved -- the judge was not alerted to the erroneousness of the jury instruction -- and we review the error for a substantial risk of miscarriage of justice. See Commonwealth v. Richardson, 479 Mass. 344, 353, 94 N.E.3d 819 (2018).
"An error creates a substantial risk of a miscarriage of justice unless we are persuaded that it did not materially influence the guilty verdict.... In applying this standard, we analyze the potential impact of the error on the verdict, and review the record to determine the strength of the Commonwealth's case, absent the improper evidence" (quotations, alteration, and citation omitted). Id. at 354-355, 94 N.E.3d 819. Here, the Commonwealth, despite agreeing with the trial judge's suggestion that the supplemental instruction was warranted and should be given, never argued before the jury that the defendant accidentally or negligently set the fire or that she formed the requisite intent after having set the fire. The Commonwealth consistently argued that *1147 the defendant intended to burn the apartment building at the time she set the fire, and, as we have concluded, that argument had compelling support in the evidence. In addition, the evidence regarding the defendant's acts or omissions after she set the fire was relevant and admissible as to both the specific intent theory of arson and the offense of involuntary manslaughter. We are persuaded, therefore, that the error did not materially influence the guilty verdict.
The defendant also argues that it was improper to provide the supplemental instruction because the Commonwealth waived the **129 right to pursue the alternative failure to extinguish or report theory by its representation at the hearing on the motion for bill of particulars. Specifically, the defendant suggests that the Commonwealth's sudden reversal, in response to the trial judge's sua sponte suggestion that the supplemental instruction was warranted, prejudiced the preparation of her defense because had she known the alternative theory would be pursued she could have presented additional evidence to put her acts or omissions following the setting of the fire in a different (i.e., less inculpatory) light. The defendant further argues that she was prejudiced by the last-minute revival of the alternative theory because it opened the door for the jury to consider her acts or omissions after she set the fire that were otherwise irrelevant.
Because evidence of the defendant's acts or omissions following the setting of the fire was relevant and admissible with respect to both the specific intent theory of arson and the offense of involuntary manslaughter, the defendant had notice of and reason to offer additional evidence on those issues before the Commonwealth reversed its position regarding the alternative theory. Therefore, the jury did not have before them any facts that were otherwise inadmissible. The defendant's claims of prejudice, therefore, miss the mark.
Further, even if we were to agree with the dissent and deem the defendant's objection to the supplemental instruction to have been preserved by her objection on the basis of waiver, we still conclude that the error in providing the instruction was harmless. See Commonwealth v. Flebotte, 417 Mass. 348, 353, 630 N.E.2d 265 (1994) (error harmless if reviewing court "sure that [it] did not influence the jury, or had but a slight effect" [citation omitted] ). Although there was a variance between the Commonwealth's representation at the bill of particulars hearing and its response to the trial judge's sua sponte suggestion that the supplemental instruction was warranted, there was no variance between the Commonwealth's representations to the motion judge and the evidence it offered or the arguments it made to the jury at trial. As detailed supra, the Commonwealth's argument to the jury, as it had previewed at the motion hearing, was that the defendant fully intended to burn a portion of the apartment building when she ignited a bag of Brewer's clothes. The Commonwealth never argued that the fire was accidentally or negligently set. Nor could the jury have reached such a conclusion based on any reasonable view of the evidence. But for the reference in the instructions to the failure to **130 report theory, therefore, the focus of the trial was where it should have been and, given that the arson charge was tried strictly on a specific intent basis, was skewed in favor of the defendant.
4. Other issues. Because of our decision, we address the other issues raised by the defendant only briefly.[19]
*1148 a. Inherently dangerous felony. In her instructions to the jury on the felony-murder in the second degree charge, the trial judge indicated that the third element that the Commonwealth had to prove was that the underlying felony was inherently dangerous or that the defendant acted with a conscious disregard for the risk to human life. Over the defendant's objection, the judge further instructed that, as a matter of law, arson is inherently dangerous to human life. The defendant argues that this was error and that the jury should have decided whether, in this case, she acted with a conscious disregard for the risk to human life.
In Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held that the right to due process under the Fifth Amendment to the United States Constitution and the right to notice and a jury trial guaranteed by the due process clause and the Sixth Amendment to the United States Constitution, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 476 & 490, 120 S.Ct. 2348. Here, the defendant argues that the use of arson as the predicate felony for the conviction of murder in the second degree had the effect for her of increasing the penalty for arson from its maximum of twenty years in State prison, see G. L. c. 266, § 1, to one of imprisonment in State prison for life, with eligibility for parole after fifteen years, see G. L. c. 265, § 2, and G. L. c. 127, § 133A,[20] based on the determination whether she acted with a conscious disregard for **131 the risk to human life. Therefore, she argues that, under Apprendi, the jury must determine if she acted with a conscious disregard for the risk to human life.
The argument fails because it is well settled that the question whether a felony is inherently dangerous to human life is one of law. See Commonwealth v. Wadlington, 467 Mass. 192, 208, 4 N.E.3d 296 (2014). Moreover, arson has been identified by this court on numerous occasions as inherently dangerous as a matter of law. See Commonwealth v. Holley, 478 Mass. 508, 528, 87 N.E.3d 77 (2017) ; Commonwealth v. Bell, 460 Mass. 294, 308, 951 N.E.2d 35 (2011) ; Commonwealth v. Mello, 420 Mass. 375, 391, 649 N.E.2d 1106 (1995), citing Commonwealth v. Matchett, 386 Mass. 492, 505 n.15, 436 N.E.2d 400 (1982).[21] Contrast Commonwealth v. Tevenal, 401 Mass. 225, 230, 515 N.E.2d 1191 (1987) (only where judge determines that *1149 felony is not inherently dangerous does it become factual question whether defendant acted in conscious disregard for risk to human life).
b. Disproportionality in sentencing. The defendant further argues that her sentence on the conviction of murder in the second degree on a theory of felony-murder violates the requirement of proportionality in sentencing under the Eighth Amendment to the United States Constitution and art. 26 of Massachusetts Declaration of Rights. She argues that, to be constitutionally firm, the intent element for felony-murder in the second degree should not have been constructively implied from the arson conviction.[22] Rather, the jury should have determined whether she acted with a conscious disregard for the risk to human life.
"[A] heavy burden is on the sentenced defendant to establish that the punishment is disproportionate to the offense for which [s]he was convicted.... It must be so disproportionate to the crime that it shocks the conscience and offends fundamental notions **132 of human dignity" (quotations and citations omitted). Commonwealth v. Alvarez, 413 Mass. 224, 233, 596 N.E.2d 325 (1992). In making this assessment, "we examine three objective considerations: (1) the nature of the offender and offense in light of the degree of harm to society; (2) sentencing provisions in other jurisdictions for similar offenses; and (3) sentences for more severe offenses within the Commonwealth." Id. at 233-234, 596 N.E.2d 325.
Arson of a dwelling place, especially when committed by an adult, is, as this case confirms, "a heinous, life-threatening crime." DeCicco, 44 Mass. App. Ct. at 127, 688 N.E.2d 1010. In some other jurisdictions, causing another person's death in the course of committing arson is punished more harshly than in Massachusetts.[23] The sentence for the more serious offense of murder in the first degree in Massachusetts, meanwhile, is life imprisonment with no eligibility for parole. G. L. c. 265, § 2 (a ). Thus, a life sentence, with parole eligibility after fifteen years, for causing death in the course of the commission of arson, does not shock the conscience or offend fundamental notions of human dignity.[24]
c. Instructions to the grand jury. "Generally speaking, the Commonwealth is not required to provide legal instructions on the elements of an offense for which it seeks an indictment."
*1150 Commonwealth v. Rex, 469 Mass. 36, 41 n.10, 11 N.E.3d 1060 (2014). We have, however, recognized two limited exceptions to this rule. First, such an instruction should be provided where the grand jury requests it. See Commonwealth v. Noble, 429 Mass. 44, 48, 707 N.E.2d 819 (1999). Second, where a juvenile is accused of murder and there is substantial evidence of mitigating circumstances, the grand jury must be instructed on the elements of murder and mitigating circumstances and defenses. See Commonwealth v. Walczak, 463 Mass. 808, 810, 979 N.E.2d 732 (2012).[25] The defendant invites us to create another exception for cases like this one involving murder and arson **133 because of the severity of the potential punishment involved and concern over whether a lay grand juror could possibly understand the nature of the evidence required to establish probable cause for such "complex" offenses. We decline to create such an exception.[26]
Judgments affirmed.
GANTS, C.J. (dissenting in part, with whom Lenk and Budd, JJ., join).
I concur in parts 1, 2, and 4 of the court's opinion. Further, I agree with the court that the judge erred by instructing the jury that "a person may have the required intent for arson if he or she negligently or accidentally causes a fire and then wilfully and maliciously makes no attempt to extinguish it or to report it." I conclude that the judge's instruction was erroneous for two reasons: first, because the instruction mischaracterizes the intent required to prove the crime of arson of a dwelling house, in violation of G. L. c. 266, § 1 ; and second, because at the hearing on the defendant's motion for a bill of particulars, the Commonwealth told the judge that it was proceeding solely on the theory that the defendant was guilty of arson because she intentionally set the fire, not that she failed to act after the fire was set.
I dissent from the portion of the court's opinion in which the court concludes that the erroneous jury instruction was harmless error, where it allowed the jury to convict the defendant of arson of a dwelling and felony-murder even if they had a reasonable doubt whether she intended to burn any part of the building at the moment when she threw a lit piece of paper on a duffel bag containing her boyfriend's clothes. I agree with the court that there was sufficient evidence to permit the jury to find that she had that intent, but I conclude that the weight of that evidence **134 was far from overwhelming. The risk that one or more jurors found the defendant guilty of arson and felony-murder on a theory that is wrong as a matter of law (and that the Commonwealth had promised not to pursue) is too significant to permit the verdicts to stand. Justice requires that the convictions be vacated, and that the defendant be retried with correct jury instructions.
The consequence of the judge's erroneous instruction can only be understood in *1151 the context of the other jury instructions that she gave. She instructed the jury that the Commonwealth must prove beyond a reasonable doubt that "the defendant wilfully and maliciously set fire to or caused the building to be burned," and that "[a] person acts wilfully if she intends both her conduct, for example, lighting a paper, and the resulting harm, the burning of the building or some part of it." The judge further instructed: "Although an act may be intentional, its consequences may be accidental. An accident is defined as an unexpected happening in that it occurs without intention or design on the defendant's part. If an act is accidental, it is not a crime; that is, the requirement of wilfulness means that accidentally or negligently causing burnings are not arson."[1] **135 The evidence at trial was overwhelming that the defendant intended her conduct -- because she was angry with her boyfriend, *1152 she intentionally lit a piece of paper and threw it on a pile of the boyfriend's clothes in the apartment they shared. However, the evidence was less than overwhelming that she intended "the resulting harm, the burning of the building or some part of it."
Nothing the defendant said suggested that she intended to burn any part of the building. In an interview at the Chelsea police department on January 6, 2011, the video recording of which was played for the jury at trial, the defendant engaged in the following exchange with an officer:
Q.: "So did that piece of paper have -- maybe still had a flame maybe?"
**136 A.: "It probably did that I didn't see, because all I seen was smoke on it."
...
Q.: "Okay. So you drop --"
A.: "I just threw it."
Her subsequent cellmate testified at trial that the defendant told her that she lit a notebook, "threw it on his clothes, and then the fire started."
The court concludes that the fact that the outside door to the building was locked when persons tried to enter the burning building shows that she affirmatively locked the door in order to prevent others from putting out the fire, ante at note 2, which reflects her intent to burn the building, ante at 1134-35, 121 N.E.3d 1130. But, although the evidence was compelling that the outside door was locked, the evidence was less compelling that she intended to lock it. The only evidence suggesting that she intended to lock the door came from the defendant's boyfriend, who testified:
"She just ran out and she just closed the door.
"...
"[W]hen she closed it she locked it."
When asked, "How do you know she locked it?" the boyfriend answered:
"Because it doesn't be [sic ] locked unless you lock it. You have to lock it from the inside and she knew I didn't have no key or nothing to that door. I don't think she did either."
The testimony at trial indicated that the defendant did not have a key to the building when she left, so it is unlikely that she locked the outside door with a key. From the boyfriend's testimony, one can infer that the door could be locked from the inside without a key, but there was no evidence at trial regarding what someone must do to lock the door from the inside without a key. There was no photograph of the locking mechanism of the outside door admitted at trial; nor was there any evidence describing the locking mechanism. Even if we were to accept the inference from the boyfriend's testimony that the door typically was unlocked, there was no evidence as to how frequently (if ever) someone **137 locked the outer door, thus locking the defendant and her boyfriend out of the building. Moreover, even if the defendant did intentionally lock the outside door after she set fire to the clothes, the relevant intent for the crime of arson is her intent at the time she threw the lit piece of paper, not her intent at the time she left the building. See Commonwealth v. Peaslee, 177 Mass. 267, 273-274, 59 N.E. 55 (1901) ("If the accused intended to rely upon his own hands to [set a fire], he must be shown to have had a present intent to accomplish the crime without much delay, and to have had this intent at a time and place where he was able to carry it out"). But as discussed infra, the judge's erroneous instruction permitted the jury to convict the defendant regardless of when they believed she formed the requisite intent to burn the dwelling.
Nor was there overwhelming circumstantial evidence that the defendant intended to burn anything more than the defendant's clothes. The defendant's boyfriend *1153 testified at trial that he kept his clothes in "a big duffel bag right there in [the] corner." Based on photographs and a videotape of the fire scene taken after the fire and offered in evidence, it appears that the pile of clothes on which the burning paper was thrown was a substantial pile near a dresser, and that the height of the pile was approximately the height of three drawers of the dresser, in short, approximately the height of a standing duffel bag. There was no evidence that the defendant knew anything about the flammability of her boyfriend's clothes; the only relevant testimony was that she had previously tried to burn his clothes and they failed to ignite.
Moreover, even if a person of ordinary intelligence might recognize that throwing a lit piece of paper on a duffel bag full of clothes might result in the burning or charring of some part of the building, the defendant offered compelling evidence from a forensic psychologist that the defendant was not a person of ordinary intelligence. Based on the Wechsler Adult Intelligence Scale, fourth edition, which the psychologist described as "the gold standard in psychology to measure cognitive functioning ... in adults," the defendant had an intelligence quota (IQ) of 71, which is approximately two standard deviations below average. The psychologist testified that "her score is at the third percentile, which means that ... ninety-seven percent of similar aged adults scored higher than her." He noted that "[a] score of [71] is sometimes categorized **138 as borderline intellectually disabled."[2] And he explained that, because she has borderline intellectual function, she is not able to "foresee consequences, think through a plan of action, to draw logical conclusions about it." He further opined that, "when she engaged in the intentional act, as she reports, to ignite her boyfriend's clothing, she did not fully appreciate the circumstances that she was in, what could reasonably follow from that." The issue before the jury under the judge's instructions (in contrast with what the court concludes should now be under common-law general intent principles) was not whether a reasonable person in the defendant's position must have known that there was a plain and strong likelihood that the apartment would be set on fire or burned; the issue was whether this borderline intellectually disabled defendant must have known that. With an IQ at the third percentile, consequences that might have been apparent to a reasonable person of average intelligence might not have been apparent to the defendant.
From this evidence, a reasonable juror may have had a reasonable doubt whether it was inevitable that throwing a lit piece of paper on the duffel bag full of clothes would cause the burning or charring of some part of the building. And even if a reasonable juror believed that result to be inevitable, that juror may have had a reasonable doubt that this defendant recognized its inevitability and intended that result. And if the judge's instructions had been legally correct, the consequence of that reasonable doubt may have been a not guilty verdict or a hung jury, or a guilty verdict of involuntary manslaughter.[3]
The judge's erroneous instruction, however, allowed any juror who may have had *1154 a reasonable doubt whether the defendant's act was accidental (because she intended to burn the clothes but not the building) to find the defendant guilty of arson and felony-murder on a separate theory -- that she set fire to the clothes, without intending to burn any part of the building, but having accidently set fire to the building, "willfully and maliciously [made] no attempt to extinguish or to report it." This erroneous arson instruction allowed the jury to convict the defendant on an **139 incorrect theory of law regarding the most fundamental issue in the case: whether the defendant intended to burn the dwelling when she threw the lit piece of paper onto the duffel bag of clothes.
The court concludes that the standard of review for this error should be whether it creates a substantial risk of a miscarriage of justice because the defendant objected to this jury instruction only on the ground that the Commonwealth, in response to the defendant's motion for a bill of particulars, had represented that it would not proceed on the theory of failure to act; the defendant did not additionally object on the ground that the instruction constituted an error of law. Where the Commonwealth proceeds on a theory that is at variance with its commitment to the court in response to a bill of particulars, the defendant is entitled to relief upon a showing that she was denied "notice to prepare [her] defense." Commonwealth v. Pillai, 445 Mass. 175, 188, 833 N.E.2d 1160 (2005), quoting Commonwealth v. Amirault, 404 Mass. 221, 234, 535 N.E.2d 193 (1989). If the defendant was not afforded such notice, the appropriate standard should be to review for prejudicial error.
Here, the denial of the notice needed to prepare her defense caused the defendant to suffer two types of prejudice. First, in view of the Commonwealth's representation, defense counsel reasonably would not have believed that he needed to focus the defendant's factual defense on challenging whether the defendant wilfully and maliciously made no attempt to extinguish or report the fire. I agree with the court that evidence of the defendant's actions after the fire was admissible because it was relevant to her intent at the time that she set the fire. Ante at ----, 121 N.E.3d 1230. But that does not diminish the fundamental unfairness arising from the variance: the defendant here was stripped of a fair opportunity to prepare her defense to a separate and distinct theory of criminal liability that, in effect, relieved the Commonwealth of its burden to prove that she intended to set fire to a dwelling.[4]
Second, because of the Commonwealth's representation, there was no reason for defense counsel to examine the case law regarding **140 this theory before the charge conference because the Commonwealth had declared that it did not intend to proceed on this theory. Because counsel reasonably relied on the Commonwealth's assurance that it would not pursue a failure to act theory, the defendant was effectively deprived of a meaningful opportunity to object to the judge's decision to instruct the jury that it may convict the defendant on the failure to act theory. Cf. Mass. R. Crim. P. 22, 378 Mass. 892 (1979) ("if a party has no opportunity to object to *1155 a ruling or order, the absence of an objection does not thereafter prejudice him"). Either source of prejudice is sufficient alone to justify the application of the prejudicial error standard rather than the substantial risk of a miscarriage of justice standard.
Because I conclude that this case should be reviewed under the prejudicial error standard, I now turn to the question whether the defendant was prejudiced by the erroneous jury instruction. An error is nonprejudicial only if we are "sure that the error did not influence the jury, or had but very slight effect" (citation omitted). Commonwealth v. Flebotte, 417 Mass. 348, 353, 630 N.E.2d 265 (1994). "[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected" (citation omitted). Id. In light of the paucity of evidence regarding the defendant's intent, the underwhelming evidence that it was certain that throwing a smoking piece of paper on top of a duffel bag filled with clothes would inevitably burn or char some part of the building, and the expert evidence that a person with the defendant's borderline intellectual disability might not recognize that inevitability even if a person of average intelligence would, I cannot be sure that this error did not materially influence the jury's decision.
But even if the appropriate standard of review were not prejudicial error, but a substantial risk of a miscarriage of justice, I believe that the defendant would still be entitled to a new trial. We must order a new trial under the substantial risk standard "if we have a serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. Azar, 435 Mass. 675, 687, 760 N.E.2d 1224 (2002), S.C., 444 Mass. 72, 825 N.E.2d 999 (2005), quoting Commonwealth v. LeFave, 430 Mass. 169, 174, 714 N.E.2d 805 (1999). "We consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of **141 the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision." Id."We have said that this standard is particularly well suited to a situation, such as here, where the elements of a crime are erroneously stated in the jury charge." Id. See Commonwealth v. Amirault, 424 Mass. 618, 647 n.21, 677 N.E.2d 652 (1997) ("It is striking that this power [to order a new trial] is frequently used in respect to jury charges that include erroneous instructions as to the elements of a crime").
The erroneous instruction here cannot fairly be characterized as a mere "reference ... to the failure to report theory," as the court posits. Ante at 1147, 121 N.E.3d 1130. The judge twice instructed the jury on the failure to act theory, succinctly stating a second time that "in the case of arson, the Commonwealth bears the burden of proving beyond a reasonable doubt the defendant wilfully and maliciously set fire to a dwelling or alternatively, having caused the fire, then wilfully and maliciously failed to extinguish it or notify others." That error permitted the jury to find the defendant guilty even if they merely believed that she intended to burn the clothing, regardless of whether she understood when she threw the lit paper on the clothing that the consequences of that action would be to burn the dwelling.[5]
**142 *1156 Here, where the judge misstated the element of wilfulness as it applies to the crime of arson of a dwelling house and, by extension, felony-murder, and allowed the jury to convict the defendant of these crimes even if they had a reasonable doubt whether the defendant intended to burn any part of the building, I conclude that we would tolerate a substantial risk of a miscarriage of justice if we allow these verdicts to stand. Because I cannot in good conscience affirm these convictions, I respectfully dissent.
**143 APPENDIX .
Model Jury Instruction -- Arson of a Dwelling House -- G. L. c. 266, § 1
In this case, the defendant is charged with arson of a dwelling house.
In order to prove the defendant guilty of this offense, the Commonwealth must prove three elements beyond a reasonable doubt:
First: That the defendant set fire to, burned, or caused to be burned a building;
Second: That the building was a dwelling house; and
Third: That the defendant acted wilfully and maliciously.
As to the first element, the Commonwealth must prove beyond a reasonable doubt that the defendant set fire to, burned, or caused to be burned a building. This requires proof that some portion of the building must have actually been on fire or burned. There is, however, no requirement that the building be consumed by fire or destroyed. Proof that some portion of the building was burned or charred is sufficient.
As to the second element, the Commonwealth must prove beyond a reasonable doubt that the building was a dwelling house, a building adjoining or adjacent to a dwelling house, or a building whose burning resulted in a dwelling house being burned. A "dwelling house" means a building used as a dwelling, such as a single-family or multifamily house, an apartment house, tenement house, hotel, boarding house, dormitory, hospital, institution, sanatorium, or other building where people live or reside. It does not matter whether the dwelling house or other building was occupied or unoccupied at the time, although the Commonwealth must prove *1157 that the dwelling house was capable of being occupied.
As to the third element, the Commonwealth must prove beyond a reasonable doubt that the defendant acted wilfully and maliciously. Let me discuss those in reverse order, since the word "wilfully" is incorporated in the word "maliciously." "Malicious" refers to the wilful doing of an unlawful or injurious act without excuse.
"Wilful" means intentional and by design in contrast to that which is thoughtless or accidental.
To prove the third element, the Commonwealth does not necessarily have to prove that the defendant acted for the purpose of setting fire to or burning some portion of the dwelling house or other building. Rather, the Commonwealth may meet its burden of proof as to this third element by proving one of two things beyond a reasonable doubt: either that, without justification or excuse, the defendant did, in fact, act for the purpose of setting fire to, burning, or causing to be burned some portion of the dwelling house or other building, or that, without justification or excuse, the defendant intentionally engaged in an unlawful or injurious act that a reasonable person in the defendant's position would have known created a plain and strong likelihood that some portion of the dwelling house or other building would be set on fire or burned.
Keep in mind that the act that results in some portion of the dwelling house or other building being set on fire or burned must be deliberate and intentional.
**144 If you have a reasonable doubt as to whether the fire or burning was accidental, because it was caused by a negligent, thoughtless, or mistaken act of the defendant, you may not find that the defendant acted wilfully and maliciously. Accidental fires or burnings are not arson.

The statute also makes it unlawful for anyone to "aid[ ], counsel[ ] or procure[ ] the burning of ... a dwelling house." G. L. c. 266, § 1. As the defendant was not charged under that portion of the statute, we do not address it here or in the model jury instruction appended hereto.

The defendant, who did not testify at trial but provided a recorded interview to the police that was played for the jury, denied purposely locking the exterior door and suggested it must have locked automatically as she exited. It is undisputed, however, that neither the defendant nor Brewer ever possessed a key to that door. Yet, as the defendant admitted, that is the door they regularly used to enter and exit the building. Typically, therefore, the exterior door must have been unlocked. Otherwise, they would have been locked out of the building on a regular basis. It is also undisputed that the exterior door was unlocked when Brewer first returned (from the bar) and found the defendant had locked him out by locking their apartment door, which was located just inside the exterior door. Only minutes later, when he returned for a second time and observed the defendant running out of the building, the exterior door was now locked. As Brewer testified, "it doesn't ... lock[ ] unless you lock it. You have to lock it from the inside and she knew I didn't have no key ... to that door." Unless the exterior door somehow locked on its own on that one occasion, the most reasonable inference from the evidence is, as Brewer testified, that the defendant locked it.

In the days that followed, the defendant would change her story several times, first suggesting that she did not know how the fire started, and then that it was started by a defective baseboard heater, and finally that Brewer had started it.

The psychologist opined that the defendant's posttraumatic stress disorder (PTSD) resulted from her having experienced sexual and other physical abuse since she was an infant, a childhood spent being passed from one foster home to another, and periods of homelessness as an adult.

The psychologist also testified that the defendant's low cognitive functioning and PTSD impaired her ability to form the specific intent to burn the building, but his only basis for that was her self-report that the idea "she formulated was to burn [Brewer's] clothing because she was angry at him and wanted to get revenge .... [S]he lit a piece of paper on fire ... and then dropped that on his clothing and ... left."

The trial judge entered a required finding of not guilty on a charge of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A, in connection with the man forced to jump from the second floor.

The jury did not return a verdict on the alternate theory of second-degree murder, i.e., murder with malice. The defendant was sentenced to life imprisonment on the murder conviction, with eligibility for parole after fifteen years, and to two terms of from three to five years in prison for causing injury to the firefighters, both to be served concurrently with the sentence on the murder charge. At the request of the Commonwealth, the arson conviction was dismissed as duplicative of the felony-murder conviction.

The Commonwealth also had to prove that the apartment building was a "dwelling house" and that the defendant set fire to, burned, or caused it to be burned, but the defendant has not disputed those elements on appeal.

In Commonwealth v. Niziolek, 380 Mass. 513, 404 N.E.2d 643 (1980), where a defendant appealed from his conviction of arson, we stated that "malice 'characterizes all acts done with an evil disposition, a wrong and unlawful motive or purpose; the wilful doing of an injurious act without lawful excuse." Id. at 527, 404 N.E.2d 643, quoting Commonwealth v. York, 9 Met. 93, 104 (1845). As we subsequently explained in McLaughlin, 431 Mass. at 513 n.6, 729 N.E.2d 252, however, "[t]he first half of the Niziolek formulation (the part that precedes the semicolon) is, strictly speaking, surplusage that serves only to round out the meaning of the second half.... Put otherwise, 'an act done with an evil disposition, a wrong and unlawful motive or purpose' is essentially synonymous, at least in arson cases, with 'the wilful doing of an injurious act without lawful excuse' " (citations omitted). Accordingly, we conclude that it is best to dispense with the first half of the Niziolek formulation and its somewhat antiquated reference to an "evil disposition." See Dung Van Tran, 463 Mass. at 26, 972 N.E.2d 1 (modern definition of "wilfulness" dispenses with "reference to any evil intent" [citation omitted] ).

At least two commentators have suggested that the term "wilfully" is redundant when coupled with the term "maliciously." See R.M. Perkins and R.N. Boyce, Criminal Law 275 (3d ed. 1982) ("intentional act creating an obvious fire hazard to the dwelling of another, done without justification ... might well be characterized as 'wilful' ... and would certainly be malicious, but as the law has developed it is a mistake to assume that the phrase 'wilful and malicious,' when found in the definition of common-law arson, adds some distinct requirement not included in the word 'malicious' alone" [footnote omitted] ); Poulos, The Metamorphosis of the Law of Arson, 51 Mo. L. Rev. 295, 323 (1986) (although "the mens rea of arson is generally described as 'maliciously,' accompanied by either 'willfully' or 'voluntarily,' the latter words add nothing to the concept of 'malice' " [footnote omitted] ).

The judge instructed, "The word 'willfully' means that the act was intentional and by design, rather than an act that is thoughtless or accidental. A person acts willfully if she intends both her conduct, for example, the lighting of a paper, and the resulting harm, the burning of the building or some part of it." See Massachusetts Superior Court Criminal Practice Jury Instructions § 4.3.1 (Mass. Cont. Legal Educ. 2013). Instructions published in the various editions of the Massachusetts Superior Court Criminal Practice Jury Instructions can be a useful resource, but not all of them have been reviewed or approved by our courts. Contrast Model Jury Instructions on Homicide (2018) (approved and recommended by Supreme Judicial Court).

The only amendments to G. L. c. 266, § 1, since 1932 have been for purposes of providing alternatives to the punishment of not more than twenty years in State prison. See St. 1948, c. 43, § 1 ("by imprisonment in a jail or house of correction for not more than two and one half years"); St. 1974, c. 281 ("or by a fine of not more than ten thousand dollars, or by such fine and imprisonment").

The current statute "differs from common law arson in two respects. Firstly, the statute includes within its terms the burning of one's own dwelling. Secondly, one building containing many dwelling units falls within the definition of a 'dwelling house' in § 1, whereas at common law, each unit is a separate dwelling" (citations omitted). Commonwealth v. DeCicco, 44 Mass. App. Ct. 111, 127, 688 N.E.2d 1010 (1998).

The trial judge instructed the jury: "A person acts willfully if she intends both her conduct, for example, lighting a paper, and the resulting harm, the burning of the building or some part of it."

The Commonwealth took the same position at a pretrial motion hearing, when it agreed with the judge that it was only the defendant's intent "at the time of ignition" (i.e., "when lighting that match") that was relevant, although her subsequent acts or omissions could be considered in assessing her intent at the time of ignition.

The supplemental instruction was adapted from § 4.3.3 of the Massachusetts Superior Court Criminal Practice Jury Instructions, supra.

In certain circumstances, the defendant's actions may constitute wanton or reckless conduct rising to the level of involuntary manslaughter. See infra. Having returned a verdict of murder in the second degree on a theory of felony-murder based on the underlying crime of arson, however, the jury here never reached this potential lesser included offense.

General Laws c. 266, § 10, was subsequently amended, see St. 1932, c. 192, § 7, and now provides, in pertinent part: "Whoever, wilfully and with intent to defraud or injure the insurer, sets fire to, or attempts to set fire to, or whoever causes to be burned ... a building ... belonging to himself or another, and which [is] at the time insured against loss or damage by fire, shall be punished ...."

We need not address the defendant's arguments that (1) the evidence was insufficient to establish that she wilfully and maliciously failed to extinguish or report the fire; (2) a new trial is required even if the evidence was sufficient to establish one of the two "theories" of arson; and (3) the jury should have been instructed that they had to reach a unanimous decision on the underlying "theory" to convict her under § 1.

The applicable statutes were amended after the date the offense was committed here and now provide for life imprisonment, with eligibility for parole in not less than fifteen years nor more than twenty-five years, for a murder in the second degree conviction. See G. L. c. 265, § 2 (c), as inserted by St. 2014, c. 189, § 5; G. L. c. 127, § 133A, as amended through St. 2012, c. 192, § 37; and G. L. c. 279, § 24, as amended through St. 2012, c. 192, § 46.

Although this court has previously stated that "[w]e have never delineated exactly which felonies give rise to application of the [inherently dangerous] rule," Commonwealth v. Matchett, 386 Mass. 492, 505, 436 N.E.2d 400 (1982), we meant that we have never compiled an exhaustive list, not that we have never identified any felonies as inherently dangerous. Indeed, in Matchett, supra at 505 n.15, 436 N.E.2d 400, we listed inherently dangerous common-law felonies, including arson.

The present case went to trial before this court, in Commonwealth v. Brown, 477 Mass. 805, 807, 81 N.E.3d 1173 (2017), cert. denied, --- U.S. ----, 139 S.Ct. 54, 202 L.Ed.2d 41 (2018), prospectively abolished the concept of constructive malice, which in turn eliminated our common-law felony-murder rule as an independent theory of murder. Id. at 832, 81 N.E.3d 1173 (Gants, C.J., concurring) ("sole remaining function of felony-murder [is] to elevate what would otherwise be murder in the second degree to murder in the first degree where the killing occurs during the commission of a life felony").

See, e.g., Conn. Gen. Stat. Ann. § 53a-54d (West, Supp. 2018) (life with no eligibility for parole); Mich. Comp. Laws § 750.316(1)(b) (Supp. 2018) (same); N.C. Gen. Stat. § 14-17(a) (2017) (death or life with no eligibility for parole); Or. Rev. Stat. § 163.115(1)(b)(A) and (5)(a), (b) (2017) (life with no eligibility for parole until after twenty-five years).

The defendant also argues that the trial judge's ruling that, as a matter of law, arson is inherently dangerous deprived the defendant of her only defense to the felony-murder charge, i.e., that her low cognitive functioning and PTSD affected her capacity to consciously disregard the risk to human life. In so doing, she asks us to ignore the defenses she asserted to the predicate charge of arson, which also served as defenses to the felony-murder charge. This, we cannot do.

Our committee on grand jury proceedings recently submitted a report recommending various "best practices," including on issues such as when grand jurors should be instructed on defenses to the crime or on less serious offenses than the most serious potential charge and when and how grand jurors should be instructed on the law. See Supreme Judicial Court Committee on Grand Jury Proceedings, Final Report to the Justices (June 2018). See also Supreme Judicial Court Press Release, Committee on Grand Jury Proceedings Proposes Best Practices in Grand Jury Proceedings (June 27, 2018).

The Commonwealth suggests that it is generally the practice in Suffolk County to instruct the grand jury on the elements of offenses, although it is not recorded. A transcript from a recording in this case reflects that the Commonwealth provided the grand jury with the relevant language for arson from G. L. c. 266, § 1.

The entirety of the judge's instruction regarding this element of the offense is set forth below:
"The third element the Commonwealth must prove beyond a reasonable doubt is the defendant wilfully and maliciously set fire to or caused the building to be burned.
"Both wilfulness and malice are required to constitute the state of mind necessary to commit arson. The word 'wilfully' means the act was intentional and by design rather than an act that was thoughtless or accidental. A person acts wilfully if she intends both her conduct, for example, lighting a paper, and the resulting harm, the burning of the building or some part of it.
"Although an act may be intentional, its consequences may be accidental. An accident is defined as an unexpected happening in that it occurs without intention or design on the defendant's part. If an act is accidental, it is not a crime; that is, the requirement of wilfulness means that accidentally or negligently caused burnings are not arson. However a person may have the required intent for arson if he or she negligently or accidentally causes a fire and then wilfully and maliciously makes no attempt to extinguish it or to report it. In that circumstance, the necessary criminal state of mind for arson, wilfulness and maliciousness, may be formed after the fire starts.
"Now, what is the criminal state of mind necessary for arson? The Commonwealth must prove beyond a reasonable doubt not only the defendant acted intentionally but that she did so maliciously or with malice. The term 'malice' and 'maliciously' have special definitions under the law. Malice characterizes all acts done with an evil disposition or with a wrongful and unlawful motive or purpose. It also includes the wilful doing of an injurious act without any lawful excuse. Similarly, the failure to report or extinguish the fire must be as a result of an evil or wrongful motive or purpose. It is something more than thoughtlessness or a failure to understand the consequences that could follow if there is no report or effort to extinguish it.
"The Commonwealth bears the burden of proving beyond a reasonable doubt that the defendant acted wilfully and maliciously as I have defined it for you. Because this element rests upon proof regarding what the defendant knew and intended at the time of the acts in question, you should consider any credible evidence of mental impairment in determining whether the Commonwealth has met [its] burden of showing the defendant here possessed the requisite knowledge and intent. This is true even if you determine the defendant is criminally responsible for her conduct. The concept we are going to discuss later in the instructions.
"Keep in mind it is not up to the defendant to prove any mental impairment. It is incumbent on the Commonwealth to rule it out; that is, in the case of arson, the Commonwealth bears the burden of proving beyond a reasonable doubt the defendant wilfully and maliciously set fire to a dwelling or alternatively, having caused the fire, then wilfully and maliciously failed to extinguish it or notify others.
"If you conclude after you've considered all the evidence, including any evidence as to mental impairment that the Commonwealth has failed to prove she possessed the requisite intent, then you must find the defendant not guilty of arson.
"If, on the other hand, the Commonwealth has sustained its burden of proof as to all the elements I've just described, then you shall find the defendant guilty of arson."

The forensic psychologist noted that an IQ score below seventy is considered "intellectually disabled," which "used to be referred to as mildly mentally retarded." He explained that the defendant's "score is ... right on the cusp there at [71]."

The jury was not instructed regarding the lesser included offense of malicious destruction of property.

I recognize, as the court notes, ante at 1147, 121 N.E.3d 1130, that "there was no variance between the Commonwealth's representations to the motion judge and the evidence it offered or arguments it made to the jury at trial." But the fact remains that, when the judge at the charge conference suggested that she instruct the jury regarding the failure to act theory, the Commonwealth urged her to do so. And regardless of whether the Commonwealth was in any way at fault, it remains true that the defendant was deprived of adequate notice to prepare her defense to that theory of criminal liability.

The court, in concluding that the error was harmless, declares that the jury could not have reached the conclusion that the fire "was accidentally or negligently set ... on any reasonable view of the evidence." Ante at 1147, 121 N.E.3d 1130. This, respectfully, totally misses the point. The judge's instruction declared:
"If an act is accidental, it is not a crime; that is, the requirement of wilfulness means that accidentally or negligently caused burnings are not arson. However a person may have the required intent for arson if he or she negligently or accidentally causes a fire and then wilfully and maliciously makes no attempt to extinguish it or to report it. In that circumstance, the necessary criminal state of mind for arson, wilfulness and maliciousness, may be formed after the fire starts."
Shortly thereafter, she instructed:
"[I]n the case of arson, the Commonwealth bears the burden of proving beyond a reasonable doubt the defendant wilfully and maliciously set fire to a dwelling or alternatively, having caused the fire, then wilfully and maliciously failed to extinguish it or notify others."
A reasonable jury would not understand from these instructions that this alternative theory -- the failure to act theory -- applied only if the defendant negligently or accidentally set the fire. The defendant admitted that she intentionally set the fire; there would be no good reason for the judge to offer the jury this alternative where it found no support in the evidence. Rather, any reasonable jury would have understood that this alternative applied if they found that the defendant accidentally or negligently set fire to the building, and a reasonable juror "based on any reasonable view of the evidence" certainly could have concluded this to be true or, at least, had a reasonable doubt whether it was true.