Commonwealth *vs.* Iran Diaz.

Hampden. December 4, 1995. - March 13, 1996.

Present: Liacos, C.J., Wilkins, O'Connor, Greaney, & Fried, JJ.

*Practice, Criminal,* Voluntariness of statement, Reasonable doubt, Instructions to jury. Capital case. *Joint Enterprise. Constitutional Law,* Admissions and confessions. *Evidence,* Admissions and confessions, Relevancy and materiality, Voluntariness of statement, Rebuttal.

Certain spontaneous and voluntary statements of a defendant in police custody were not the product of a custodial interrogation or improper questioning, and the statements were properly admitted in evidence at trial. [270-271]

This court declined at this time to adopt or prescribe a rule of general superintendence or of common law suppressing statements taken from a defendant in custody in a police station unless those statements have been electronically recorded. [271-273]

At a murder trial the judge properly admitted certain evidence, accompanied by appropriate instructions, that tended to show the defendant's motive for participating in the murders of two people. [273]

At a murder trial the judge did not err in admitting testimony from the woman with whom the defendant had lived for about six years concerning admissions the defendant made to her. [273-274]

At a murder trial, the judge properly allowed testimony of a witness's attorney describing the circumstances under which the witness gave information to the prosecutor about the defendant, where the evidence was admissible to rebut the implication raised in the cross-examination of the witness that her incriminating testimony was of recent fabrication. [274-275]

At a murder trial there was no error in the prosecutor's closing argument and the judge's charge on reasonable doubt was proper. [275]

No reason appeared for this court to exercise its power under G. L. c. 278, § 33E, to reduce verdicts of murder in the first degree. [275]

Indictments found and returned in the Superior Court Department on September 4, 1991.

A pretrial motion to suppress evidence was heard by *Daniel A. Ford*, J., and the cases were tried before him.

*Michael J. Traft* for the defendant.

*Judy Zeprun Kalman*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant was convicted of murder in the first degree of two men and given consecutive terms of life imprisonment without the possibility of parole. He was also convicted of unlawfully carrying a firearm. The evidence indicated that the defendant had sold drugs as part of a drug operation in Holyoke headed by Pedro Ramos and had participated in the killings to avenge wrongs to Ramos or his enterprise thought to have been committed by the victims. The defendant does not challenge the sufficiency of the evidence to warrant his convictions.

The defendant objects to the denial of his motion to suppress statements that he made to the police, the admission of certain evidence, the giving of a joint venture instruction, and the judge's reasonable doubt instruction. He also seeks relief pursuant to G. L. c. 278, § 33E (1994 ed.). We affirm the convictions and decline to order a new trial or to alter the consecutive sentences imposed on the murder convictions.

The evidence warranted a finding that the defendant rode to the scene of the two murders with the two victims and two other men. An eyewitness testified to the defendant's participation in the shootings. The defendant made admissions of guilt and incriminating statements to persons who testified. The defendant also gave a signed statement to the police, which was read to the jury and admitted in evidence, in which he stated that he rode to the site of the shootings with the victims and the two men who, he said, shot the victims. According to his statement, when he asked what he was to do, he was told to act as a lookout for the two men who had the guns. He also stated that he had witnessed the shootings from across the street from where the shootings occurred. That statement, inconsistent with evidence that the defendant was one of the shooters, was sufficient with other evidence, contrary to the defendant's claim, to justify a jury instruction on joint venture and, therefore, jury findings of guilty of murder on the theory of joint venture. We need not discuss this issue further.

1. The defendant challenges the denial of his motion to suppress statements that he made while he was being fingerprinted. On the day of his arrest, the defendant had been given Miranda warnings and had signed an incriminat-

ing statement. He remained in the Holyoke police station during the next day, a Sunday. That evening, the police decided to take the defendant's fingerprints and palm prints. Before the prints were taken, the defendant said that he wanted to speak with the detectives. The detectives told him that he could do so after the prints were taken. The defendant was then taken from the cell block to the printing room. While a different detective was taking the defendant's prints, the defendant blurted out, "This is really going to fuck me up." The detective asked, "Why?," and the defendant made a second statement, saying that he had handled one of the guns on the previous day, but that it had jammed. The detective stopped the defendant from saying anything further. In fact, later tests of two guns that the police obtained and matched to bullets and casings found at the crime scene yielded no identifiable fingerprints.

Even if we assume that the effect of the Miranda warnings of the previous day had fully dissipated (the motion judge ruled otherwise), renewed Miranda warnings were not required because the defendant's statements were not the product of a custodial interrogation conducted in violation of rights which Miranda warnings were designed to protect. See *Rhode Island* v. *Innis*, 446 U.S. 291, 300-301 (1980); *Miranda* v. *Arizona*, 384 U.S. 436, 478 (1966) ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today"). The first statement was spontaneous and unprovoked. The detective's response, a one-word question, seems to have been a natural reflex action (as the judge found) that was invited by the defendant's first statement. Although the second statement was incriminatory, it was volunteered and not the product of improper probing questioning. See *Butzin* v. *Wood*, 886 F.2d 1016, 1018 (8th Cir. 1989), cert. denied, 496 U.S. 909 (1990); *United States* v. *Rhodes*, 779 F.2d 1019, 1032 (4th Cir. 1985), cert. denied, 476 U.S. 1182 (1986); 1 W.R. LaFave & J.H. Israel, Criminal Procedure § 6.7(d), at 514-515 (1984). Cf. *Commonwealth* v. *Bryant*, 390 Mass. 729, 739 (1984); *Commonwealth* v. *Rubio*, 27 Mass. App. Ct. 506, 511-512 (1989).

2. The defendant asserts a far-reaching challenge to the admissibility of all his custodial statements to the police, contending that his statements should have been suppressed

because they were not electronically recorded. In 1993, we declined to create a rule requiring electronic recording of custodial interrogations. *Commonwealth* v. *Fryar*, 414 Mass. 732, 742 n.8 (1993). In 1985, the Supreme Court of Alaska had held that "an unexcused failure to electronically record a custodial interrogation conducted in a place of detention violates a suspect's right to due process, under the Alaska Constitution, and that any statement thus obtained is generally inadmissible" (footnote omitted). *Stephan* v. *State,* 711 P.2d 1156, 1158 (Alaska 1985). Since our opinion in the *Fryar* case, the Supreme Court of Minnesota, acting under its supervisory power, has announced a prospective rule "that all custodial interrogation including any information about rights, any waiver of those rights, and all questioning shall be electronically recorded where feasible and must be recorded when questioning occurs at a place of detention." *State* v. *Scales,* 518 N.W.2d 587, 592 (Minn. 1994). A "substantial" violation of the recording requirement requires suppression of the evidence. *Id.*

The American Law Institute's Model Code of Pre-Arraignment Procedure and the Uniform Rules of Criminal Procedure require the electronic recording of custodial interviews. See Model Code of Pre-Arraignment Procedure § 130.4(3) (1975) ("The regulations relating to sound recordings shall establish procedures to provide a sound recording of . . . (c) any questioning of the arrested person and any statement he makes in response thereto"); Unif. R. Crim. P. 243(b), 10 U.L.A. 32 (Master ed. Supp. 1992) (as to an individual in custody, "[t]he informing of rights, any waiver thereof, and any questioning must be recorded upon a sound recording device whenever feasible or if questioning occurs at a place of detention").

There is force to a recording requirement particularly if a defendant is being questioned at a police station. The cost of the equipment and its operation is minimal. The machinery is not difficult to use. A recording speaks for itself literally on questions concerning what was said and in what manner. Recording would tend to eliminate certain challenges to the admissibility of defendants' statements and to make easier the resolution of many challenges that are made. Compare *Commonwealth* v. *Hamilton,* 411 Mass. 313, 318-319 (1991) (motion judge suppressed tape-recorded statement that showed

defendant had not waived his rights) with *Commonwealth* v. *Bousquet*, 407 Mass. 854, 862 (1990) (voluntariness of confession corroborated by videotape). Police officials should be alert to the merits of recording custodial interrogations and be warned that the time may come when recording in places of detention, at least, will be mandatory if a statement obtained during custodial interrogation is to be admissible.

We decline at this time to adopt or prescribe a rule of general superintendence or of common law suppressing statements taken from a defendant in custody in a police station unless those statements have been electronically recorded. However, defense counsel is entitled to pursue the failure of the police to record a defendant's statements. Counsel may, for example, inquire of a testifying police officer, as happened here, whether he or she was aware of the availability of recorders to use during the questioning of suspects. Counsel may argue to a jury and to a judge as factfinder that the failure of the police to record electronically statements made in a place of custody should be considered in deciding the voluntariness of any statement, whether the defendant was properly advised of his rights, and whether any statement attributed to the defendant was made.

3. We conclude that the judge did not err in admitting certain evidence. (a) The judge did not abuse his discretion in admitting testimony that, approximately two months before the crimes in this case, the defendant had discussed with an acquaintance the possibility of killing a New York competitor of Ramos, that the defendant had said that he desired to move up in Ramos's organization, and that the defendant had volunteered to "take care of" the problem in New York. The defendant concedes that the evidence may have demonstrated a motive for the defendant to participate in the murders in this case, but challenges the substantial prejudice of that evidence. The evidence tended to show the defendant's connection with Ramos and a motive for committing the killings in this case. The judge's ruling, which was accompanied by a cautionary instruction concerning proper use of the evidence, was within his discretion. See *Commonwealth* v. *Valentin*, 420 Mass. 263, 270 (1995).

(b) The judge did not err in admitting testimony from the woman with whom the defendant had lived for about six years concerning damaging admissions that the defendant

made to her concerning his involvement in the murders. The witness was reluctant to testify and on cross-examination said that she had given the police a statement only after they had threatened her with prosecution and the removal of her children from her custody. The witness was not married to the defendant, and we decline to establish a common law privilege, similar to the spousal privilege of G. L. c. 233, § 20 (1994 ed.), applicable to other people who live together. In any event, the defendant did not raise such a challenge at trial, and the privilege, if it were to exist, would be that of the witness, not the defendant. See *Commonwealth* v. *Maillet*, 400 Mass. 572, 576 (1987). The voluntariness of the witness's statements to the police and of her testimony was for the jury.

(c) An understanding of the defendant's final evidentiary argument requires the recitation of circumstances relating to the testimony of Marilyn Reyes. Reyes testified as a Commonwealth witness that, on the day before the murders, the defendant had told her that he had a job to do because "they probably had found a rat and that he was going to get paid eight thousand for it." Reyes also testified that criminal charges were pending against her and that, in the disposition of those charges, the prosecution would take into consideration her help in this case. In cross-examination, defense counsel pressed the matter of her cooperation in relation both to the serious criminal charges pending against her and to her desire to avoid imprisonment and thus regain custody of her two children.

The defendant objected to the admission of testimony from Reyes's lawyer who was defending the criminal charges pending against Reyes. Reyes's lawyer testified to the circumstances under which Reyes first told the prosecutor about what she knew about the murders. Reyes's lawyer explained that she and Reyes had met with the prosecutor in February, 1992, and that, in response to questions from the prosecutor as to whether she knew anything about the murder case and any statement made by the defendant, Reyes had given a written statement of what she knew about the murder case.

This testimony from Reyes's lawyer was admissible in the judge's discretion to rebut the implication of the cross-examination that Reyes's incriminating testimony was of recent fabrication. See *Commonwealth* v. *Saarela*, 376 Mass.

720, 722 (1978). Therefore, the defendant's general objection to the admission of the testimony of Reyes's lawyer about the conversation with the prosecutor was properly overruled. The evidence was not admissible to prove the truth of what was said, but no limiting instruction was requested. Moreover, the evidence was not prejudicial. The defendant's point that Reyes was testifying to protect herself and to regain custody of her children was not undercut.

4. The defendant's remaining arguments can be disposed of briefly. (a) We see no error in the prosecutor's closing argument. (b) The judge's charge on reasonable doubt, using the words "moral certainty," in conjunction with clarifying language, was proper. See *Commonwealth* v. *Gagliardi*, 418 Mass. 562, 568 n.3, 571-572 (1994), cert. denied, 115 S. Ct. 753 (1995). Cf. *Commonwealth* v. *Pinckney*, 419 Mass. 341, 348-349 (1995). (c) We decline to exercise our authority under G. L. c. 278, § 33E, to alter the imposition of consecutive life sentences for these premeditated, cold-blooded murders.

*Judgments affirmed.*