NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13355


COMMONWEALTH  vs.  MELISSA PFEIFFER.



Suffolk.     March 6, 2023. - July 17, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Wendlandt,
& Georges, JJ.


Homicide.  Felony-Murder Rule.  Burning a Dwelling House.  Fire
    Fighter.  Practice, Criminal, Postconviction relief,
    Sentence, Judicial discretion, State of mind, Verdict,
    Instructions to jury, Retroactivity of judicial holding.
    Estoppel.  Evidence, Expert opinion, State of mind, Intent.
    Mental Impairment.  Intent.  Retroactivity of Judicial
    Holding.




Indictments found and returned in the Superior Court
Department on March 8, 2011.

Following review by this court, 482 Mass. 110 (2019), a
motion for postconviction relief was heard by Janet L. Sanders,
J.

The Supreme Judicial Court granted an application for
direct appellate review.


Ian MacLean, Assistant District Attorney, for the
Commonwealth.
Patrick Levin, Committee for Public Counsel Services, for
the defendant.

Merritt Schnipper, Radha Natarajan, Stephanie Hartung, Katharine Naples-Mitchell, & Audrey Murillo, for New England Innocence Project & others, amici curiae, submitted a brief.
David J. Nathanson & Eva G. Jellison, for Daniel Rogers, amicus curiae, submitted a brief.

GAZIANO, J. At issue in this appeal is whether the trial judge abused her discretion by reducing the defendant's verdict pursuant to Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995). The defendant was convicted of murder in the second degree on a theory of felony-murder, with arson as the predicate felony. We affirmed the defendant's conviction on direct review, as there was sufficient evidence to support the jury's verdict. See Commonwealth v. Pfeiffer, 482 Mass. 110, 122, cert. denied, 140 S. Ct. 498 (2019). Following this, the trial judge reduced the verdict to involuntary manslaughter in response to the defendant's rule 25 (b) (2) motion. With the verdict reduced, the judge resentenced the defendant to from eight to ten years' incarceration, which, given time served, resulted in the defendant being eligible for release. The Commonwealth appealed from the verdict reduction on the ground that the judge abused her discretion.

Under rule 25 (b) (2), a judge may reduce a verdict on the basis that it is "against the weight of the evidence, or not consonant with justice." See Commonwealth v. Arias, 488 Mass. 1004, 1007 (2021). A judge may exercise this discretionary

authority even where the evidence is sufficient to support the jury's verdict.  However, because rule 25 (b) (2) allows a judge to undo the work of the jury, this power is to be used sparingly.  A judge may not reduce a verdict if the evidence does not point to a lesser offense.

Here, the judge reduced the defendant's conviction because, among other reasons, the weight of the evidence suggested that the defendant had not had the requisite intent when she set the fire that formed the basis for the arson conviction.  The judge also took into account mitigating circumstances constituted by the defendant's severe cognitive limitations and mental disorder.  We conclude that the judge did not abuse her discretion by reducing the jury's verdict.  Accordingly, we affirm the judge's order reducing the defendant's conviction of murder in the second degree to involuntary manslaughter.[1]

1.  Background.  On December 24, 2010, the defendant was living on the first floor of a two-unit apartment building with her boyfriend and their two year old son.  At around 9 P.M., after dropping off their son with a relative, the defendant returned to the apartment, where an argument ensued with her boyfriend, who then left for a nearby bar.  About an hour later,

---

[1] We acknowledge the amicus briefs submitted by the New England Innocence Project, the Criminal Justice Institute at Harvard Law School, and the Massachusetts Association of Criminal Defense Lawyers; and by Daniel Rogers.

while her boyfriend was gone, the defendant set afire a piece of paper and tossed it onto a duffel bag of clothing that was on the floor in a corner of the apartment. The defendant then left the building, the exterior door of the building locking behind her. Her boyfriend returned to find the defendant outside the building, at which point she told him that his clothes were on fire. The defendant remained on the scene arguing with her boyfriend as flames became visible through the apartment windows. The defendant did not call for help or alert other occupants. The blaze quickly engulfed the building, killing one second-floor occupant and severely injuring another. Two firefighters also were injured.

The defendant was charged with arson of a dwelling house, G. L. c. 266, § 1; murder in the second degree, G. L. c. 265, § 1; assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A; and two counts of injuring a firefighter, G. L. c. 265, § 13D 1/2.

At trial, which commenced in 2016, the defendant argued that there was insufficient evidence that she intended to burn the building when she lit her boyfriend's clothing on fire. The defense emphasized the defendant's cognitive limitations, as well as her mental disorder. The defense called as a witness Dr. Frank DiCataldo, who testified that when the defendant was a child, she was abused sexually and physically by her biological

parents, placed in a series of foster homes, and admitted to several hospitals for psychiatric treatment.  He further testified that the defendant's history supported a diagnosis of posttraumatic stress disorder (PTSD).

DiCataldo also testified about the defendant's cognitive abilities.  Based on testing he had conducted, DiCataldo determined that the defendant had extremely limited intellectual functioning and that she possessed an over-all intelligence quotient of seventy-one, which placed her in the third percentile of adults.  DiCataldo testified that the defendant's perceptual reasoning abilities were extremely weak, such that "it [took] her a long time to process information."  He concluded that, although the defendant's deficits did not mean that she was not criminally responsible, she nonetheless was impaired in her ability to understand fully the consequences that could flow from her actions, including when she set afire her boyfriend's clothing.

DiCataldo wrote a report on his examination of the defendant, which was not presented to the jury, that provided greater detail on the defendant's history of abuse and neglect. The report stated that the defendant's mental disorder "likely constituted a significant mental impairment that substantially compromised her ability to formulate the requisite intention to act with deliberation and forethought regarding the reasonable

likely outcome of her actions." The report also stated that, at the time of the offense, the defendant was substantially impaired in "her ability to contemplate the consequences of her actions and control her behavior."

Prior to trial, the defendant filed notice with the court of her intent to introduce evidence of her mental condition. See Mass. R. Crim. P. 14 (b) (2) (A), as appearing in 463 Mass. 1501 (2012). In response, the Commonwealth filed a motion to require the defendant to submit to an examination by an independent evaluator. See Mass. R. Crim. P. 14 (b) (2) (B). The motion was allowed, and the Commonwealth filed notice that the chosen evaluator would be Dr. Alison Fife.

Fife wrote a report on the defendant, which was filed with the court. See Mass. R. Crim. P. 14 (b) (2) (B) (iii). In the report, Fife concluded that the defendant's "capacities to conform her behavior to the requirements of the law [on the night of the incident], specifically to maintain behavioral control, were impaired by her cognitive limitations and PTSD as evidenced by her concrete thinking and poor analytical skills, impaired ability to weigh the consequences of her emotions and resultant behaviors before acting on them[,] and poor impulse control and coping skills." Fife's report was viewed by defense counsel, who then provided a copy of the report with redactions

to the Commonwealth.  Fife did not testify at trial, and her report was not presented to the jury.

During trial, the Commonwealth requested jury instructions that characterized arson as a crime of specific intent.  Under the proposed instructions, to convict the defendant of arson the jury would have to find beyond a reasonable doubt that the defendant "acted with the specific intent to willfully and maliciously set fire to or cause to be burned a dwelling."  The judge granted the Commonwealth's request and instructed the jury that a person commits arson only "if she intends both her conduct, for example, lighting a paper, and the resulting harm, the burning of the building or some part of it."  This language reflected the model jury instructions on arson at the time of the defendant's trial.  See Massachusetts Superior Court Criminal Practice Jury Instructions, Crimes Against Property and Other Crimes § 4.3.1 (Mass. Cont. Legal Educ. 2d ed. 2013).

The judge instructed the jury that they could convict the defendant of murder in the second degree under either a theory of felony-murder or a theory of unlawful killing with malice. The judge also instructed the jury on the lesser included offense of involuntary manslaughter.

The defendant was convicted of murder in the second degree on a theory of felony-murder with arson as the predicate felony, as well as two counts of injuring a firefighter.  She was

sentenced to a mandatory term of life in prison on the murder charge, with concurrent sentences of from three to five years on the other two counts. The jury did not reach unanimous agreement on the theory that the defendant had committed an unlawful killing with malice.

The defendant appealed from those verdicts, and this court affirmed them. See Pfeiffer, 482 Mass. at 112. We concluded, however, that the judge had erred in instructing the jury that an arson conviction requires specific intent to burn a dwelling. See id. at 120. We held, rather, that arson is a crime of general intent. See id. at 120-121.[2]

The defendant filed a motion for a new trial or, in the alternative, for a reduction in the verdict, pursuant to rule 25 (b) (2) and Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). In 2021, the trial judge held a nonevidentiary hearing on that motion. The judge denied so much of the motion as requested a new trial, but she concluded that the defendant had met her burden of showing that justice was not done and accordingly reduced the jury's verdict of murder in the second degree to involuntary manslaughter. The judge based her conclusion on four factors: the weakness of the evidence

---

[2] We affirmed the conviction despite the erroneous instruction because the error was "[t]o the defendant's benefit." See Commonwealth v. Pfeiffer, 482 Mass. 110, 121, cert. denied, 140 S. Ct. 498 (2019).

supporting the defendant's intent to burn a dwelling; the mitigating circumstances constituted by the defendant's personal characteristics; an erroneous supplemental instruction she had provided the jury during trial;[3] and this court's decision in Commonwealth v. Brown, 477 Mass. 805, 825 (2017) (Gants, C.J., concurring), cert. denied, 139 S. Ct. 54 (2018), issued eighteen months after the defendant's trial, establishing that felony-murder cannot be an independent theory of liability for murder. The judge, in her memorandum of decision and order, relied on the reports written by DiCataldo and Fife.

The Commonwealth appealed, and the defendant filed a cross appeal. We granted the defendant's request for direct appellate review.

2. Discussion. The Commonwealth argues that the judge abused her discretion and committed clear error of law when she

---

[3] The judge had instructed the jury that, with regard to the intent required to prove arson, the Commonwealth could satisfy its burden of proof by showing that the defendant, having accidentally or negligently caused the fire, then willfully and maliciously had failed either to extinguish or to report it. This reflected the model jury instructions on arson at the time of the defendant's trial. See Massachusetts Superior Court Criminal Practice Jury Instructions, Crimes Against Property and Other Crimes § 4.3.3 (Mass. Cont. Legal Educ. 2d ed. 2013). We held that this instruction was erroneous because "accidentally or negligently set fires cannot form the basis for arson under G. L. c. 266, § 1." Pfeiffer, 482 Mass. at 125. We further held that the error did not require a new trial, because it did not create a substantial risk of a miscarriage of justice. See id. at 128-129.

reduced the defendant's conviction.  In particular, the Commonwealth contends that the judge was directly estopped from analyzing the weight of the evidence; the judge erred in considering evidence that was not presented at trial; the judge applied an incorrect legal standard to her analysis of the evidence; and the judge erred by considering our holding in Brown, 477 Mass. at 825 (Gants, C.J., concurring).[4]

a.  Rule 25 (b) (2).  Rule 25 (b) (2) "provides trial judges with the flexibility to fashion appropriate relief after a verdict has been returned" if justice so requires.  See Commonwealth v. Gilbert, 447 Mass. 161, 167 (2006).  In particular, rule 25 (b) (2) empowers a judge to reduce a verdict to a lesser included charge, "despite the presence of sufficient evidence to support the jury's verdict."  See Commonwealth v. Pagan, 471 Mass. 537, 542, cert. denied, 577 U.S. 1013 (2015), quoting Commonwealth v. Sokphann Chhim, 447 Mass. 370, 381 (2006).  See also Commonwealth v. Sanchez, 485 Mass. 491, 504 (2020).  A judge appropriately exercises this power "where the weight of the evidence in the case . . . points to a lesser crime."  Commonwealth v. Rolon, 438 Mass. 808, 821 (2003).  Under rule 25 (b) (2) review, the judge "may review all the

---

[4] The defendant argues that the judge erred in denying her motion for a new trial, but she waives her cross appeal in the event that this court affirms the verdict reduction.

evidence, including the defendant's version of the facts," even if this requires the judge to substitute her "view of the evidence for that of the jury." Commonwealth v. Woodward, 427 Mass. 659, 668-669 (1998). Generally, a "trial judge's decision on a rule 25 (b) (2) motion 'should be guided by the same considerations'" as those that drive G. L. c. 278, § 33E, review. See Rolon, supra at 820, quoting Commonwealth v. Gaulden, 383 Mass. 543, 555 (1981).

Because rule 25 (b) (2) vests in a judge the power to undo the work of the jury, this postconviction authority "should be exercised only sparingly."[5] See Commonwealth v. Grassie, 482 Mass. 1017, 1018 (2019). The judge "is not to sit as a 'second jury.'" Sokphann Chhim, 447 Mass. at 381, quoting Commonwealth v. Keough, 385 Mass. 314, 321 (1982). See Woodward, 427 Mass. at 672, quoting Williams v. Florida, 399 U.S. 78, 87 (1970) ("The importance that our system attaches to trial by jury derives from the special confidence we repose in a body of one's peers to determine guilt or innocence as a safeguard against arbitrary law enforcement" [quotation omitted]). Nonetheless, a judge should reduce a verdict where the result would be more "consonant with justice." Rolon, 438 Mass. at 820, quoting Woodward, supra at 666.

---

[5] Here, for example, this was the first case in the judge's twenty-seven year career in which she reduced a verdict.

In reviewing a judge's order to reduce a verdict, "[o]ur role is not to decide whether we would have acted as the trial judge did." Sokphann Chhim, 447 Mass. at 381. "We defer to the trial judge because [she] has the advantage of face to face evaluation of the witnesses and the evidence at trial. [She] is in a far better position than we are to make the judgment required by the rule." Commonwealth v. Reavis, 465 Mass. 875, 891 (2013), quoting Woodward, 427 Mass. at 668. Accordingly, we will reverse a verdict reduction only if "the judge abused his [or her] discretion or committed an error of law." Rolon, 438 Mass. at 821. "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

In Commonwealth v. Lyons, 444 Mass. 289, 290 (2005), for example, the defendant was convicted of murder in the second degree for the shaking death of his two week old son. The trial judge reduced the defendant's conviction to involuntary manslaughter, which, unlike murder in the second degree, does not require a finding of malice. See id. at 290, 293. Among the judge's reasons for reducing the verdict were the absence of evidence of prior abuse by the defendant, that the defendant's

crime was a "momentary act of 'extraordinarily poor judgment,'" and the defendant's history of being "a steady worker with no prior criminal record."  See id. at 292-293.  We held that the judge's decision was an abuse of discretion because none of the aforementioned factors indicated an absence of malice.  See id. at 293-297.  See also Pagan, 471 Mass. at 544 ("personal circumstances alone cannot warrant a reduction of the verdict").

b.  Direct estoppel.  The Commonwealth contends that, because this court previously assessed the evidence against the defendant in its decision in Pfeiffer, 482 Mass. at 121, the judge was directly estopped from analyzing the weight of the evidence.

Under the principle of direct estoppel, a judge is precluded from reviewing an issue that previously was "litigated and determined," if "such determination was essential to the . . . conviction, and . . . the defendant had an opportunity to obtain review of the determination."  See Arias, 488 Mass. at 1006, quoting Commonwealth v. Watkins (No. 1), 486 Mass. 801, 806 (2021).  Accordingly, a judge may not reduce a verdict pursuant to a rule 25 (b) (2) motion "solely based on the assertion that the direct appeal was decided wrongly" (quotation, citation, and alterations omitted).  See Sanchez, 485 Mass. at 498.

14

To establish that direct estoppel applies, "the Commonwealth must show that the issue[] raised in the [rule 25 (b) (2) motion] [was] actually litigated and determined" in the original proceeding. Commonwealth v. Ellis, 475 Mass. 459, 475 (2016), quoting Commonwealth v. Rodriguez, 443 Mass. 707, 710 (2005). If one proceeding "involves application of a different legal standard" from that applied in another proceeding, then the two proceedings cannot be said to have addressed the same issue. See B&B Hardware, Inc. v. Hargis Indus., 575 U.S. 138, 154 (2015).

Here, the judge reduced the jury's verdict because the weight of the evidence suggested that the verdict was not consonant with justice. See Rolon, 438 Mass. at 820. This court, in contrast, held that there was sufficient evidence to support a reasonable inference that "the defendant acted with the requisite specific intent [to burn a dwelling] at the time she set the fire." See Pfeiffer, 482 Mass. at 123. Whether a verdict is consonant with justice is a matter distinct from whether there was sufficient evidence to support the verdict. See Pagan, 471 Mass. at 542, citing Sokphann Chhim, 447 Mass. at 381-382. See also Commonwealth v. Hamilton, 83 Mass. App. Ct. 406, 409-410 (2013) (distinguishing sufficiency standard from consonance with justice standard). While this court, as part of its sufficiency review, was required to view the evidence in the

light most favorable to the Commonwealth, see Pfeiffer, supra at 122, the judge could choose to give greater "weight to the defendant's version of the events" by crediting DiCataldo's testimony and report, see Keough, 385 Mass. at 319. Accordingly, this court's previous holding did not preclude the judge from concluding that the "weight of the evidence . . . point[ed] to a lesser crime" than the jury's verdict.  See Commonwealth v. Grassie, 476 Mass. 202, 214 (2017), S.C., 482 Mass. 1017 (2019).

c.  Evidence outside trial record.  The Commonwealth argues that the judge erred by considering materials beyond the scope of the trial record.  The Commonwealth points to the judge's reliance on the written reports of DiCataldo and Fife to glean the defendant's likely state of mind at the time she set the fire.

The authority of a judge under rule 25 (b) (2) to "reduce the verdict or grant new trial is identical to the power" of this court to conduct independent review pursuant to G. L. c. 278, § 33E.  See Commonwealth v. Carter, 423 Mass. 506, 513 (1996).  Because this court, under § 33E review, may consider "evidence of the defendant's character to which the jury may or may not have had access," it follows that a judge, under rule 25 (b) (2) review, may do so as well.  See Commonwealth v. Coyne, 420 Mass. 33, 35 (1995).

The scope of new evidence that a judge may rely on to reduce a verdict, however, is not unlimited. In Commonwealth v. Kolenovic, 478 Mass. 189, 209 (2017), we held that a judge may reduce a verdict on the basis of new evidence that is related to "evidence presented at trial and the defense's theory of the case," but that a judge may not consider "evidence and a defense that were not introduced at all." If a judge were to consider the latter sort of evidence, her analysis would not be informed by her "familiarity with [the] case" (citation omitted). See Commonwealth v. Millyan, 399 Mass. 171, 189 (1987).

DiCataldo's written report was directly related to the testimony he gave at trial. The report described the results of the examination that was the basis for his testimony and included further details about the defendant's psychological profile and history of abuse. Because DiCataldo had testified about the subject matter of his report, the judge had an adequate opportunity to assess the credibility of the report's conclusions. See Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 131 (1992). DiCataldo's report therefore falls within the scope of evidence that may be considered as part of rule 25 (b) (2) review. See Pagan, 471 Mass. at 543, 545-546 (judge may reduce defendant's verdict after considering trial testimony of expert witness as well as report written by same expert witness that was not presented at trial).

It is less clear whether the judge did not err in considering Fife's report, as Fife did not testify at trial. Contrast Pagan, 471 Mass. at 543. As the judge stated, however, Fife's report "essentially agreed with [DiCataldo's] conclusions": both reports referred to the defendant's cognitive limitations, her mental disorder, and her inability to carefully plan out her actions. Fife's report, unlike DiCataldo's, stated that the defendant's "capacities to conform her behavior to the requirements of the law [on the night of the incident] . . . were impaired." DiCataldo's report, however, nonetheless indicated that the defendant likely did not contemplate the consequences of her actions at the time she set the fire. Fife's report therefore was unnecessary to support the judge's conclusions about the defendant's state of mind at the time of the offense. Accordingly, we do not decide whether the judge erred in considering Fife's report. Cf. Commonwealth v. Perez, 411 Mass. 249, 260 (1991) (any error in admitting evidence was "clearly harmless" because evidence "contain[ed] nothing of importance that was not also contained in" other, properly admitted statements).

d. Specific intent. The Commonwealth argues that the judge applied an incorrect standard to her analysis of the evidence. According to the Commonwealth, because this court held that arson is a crime of general intent, the judge erred in

reducing the verdict on the basis that there was minimal evidence that the defendant had the specific intent to burn a dwelling.

A reduction in the verdict may not be based "solely on factors irrelevant to the level of offense proved." Rolon, 438 Mass. at 822. For example, while evidence of provocation might "operate to negate malice," the presence of provocation "is not a proper basis on which to reduce a conviction of felony-murder" where malice is not an essential element of felony-murder. See id. at 823. Similarly, where a drug trafficking conviction does not depend on the defendant knowing the "volume of the material being sold," a judge may not reduce the verdict on the basis that the defendant did not know that he or she possessed the requisite volume of drugs (citation omitted). See Commonwealth v. Sabetti, 411 Mass. 770, 780-781 (1992).

This court held in Pfeiffer, 482 Mass. at 120, that arson is a crime of general intent. Accordingly, specific intent to burn a dwelling is not a necessary element of arson. See id. at 121. Rather, "the intent element of § 1 . . . may be satisfied by proof that a reasonable person in the defendant's position would have known that there was a plain and strong likelihood that some portion of a dwelling house would be set on fire or burned." Id. It would seem to follow that the defendant's

intent to burn a dwelling, or lack thereof, was irrelevant to her arson conviction.  See id. at 120-121, 143 (Appendix).

The judge's instructions to the jury, however, complicate the matter.  Jury instructions, even if erroneous, may in certain instances become the "law of the case."  See, e.g., Commonwealth v. Pinero, 49 Mass. App. Ct. 397, 399 (2000).  Here, both the defendant and the Commonwealth tried the case under the impression that arson is a specific intent crime, and the judge erroneously instructed the jury that specific intent to burn a dwelling is a necessary element of arson.

The defendant argues that the erroneous instruction became the law of the case and that it therefore was appropriate for the judge, under her rule 25 (b) (2) review, to treat arson as a crime of specific intent.  In support of her argument, the defendant cites this court's opinion on direct review of this case.  There, we affirmed the jury's verdict only after we had determined that there was sufficient evidence to "establish that [the defendant] had the specific intent to burn the apartment building."  See Pfeiffer, 482 Mass. at 121-122.  This was despite our having concluded that "the evidence was overwhelming that the defendant acted with general intent and malice for purposes of arson under G. L. c. 266, § 1."  Id. at 121.  We employed a specific intent theory in our sufficiency review because "the jury were not instructed that arson was a general

intent crime." See id. According to the defendant, this same reasoning also applies under rule 25 (b) (2) review.

To address the defendant's argument, we begin by examining why erroneous jury instructions can affect an appellate court's review of the sufficiency of the evidence, as they did in Pfeiffer, 482 Mass. at 121. The United States Supreme Court has held that a criminal conviction cannot be affirmed "on the basis of a theory not presented to the jury." See Chiarella v. United States, 445 U.S. 222, 236 (1980). "To uphold a conviction on a charge that was . . . [not] presented to a jury at trial offends the most basic notions of due process." See Dunn v. United States, 442 U.S. 100, 106 (1979). Otherwise, the defendant is denied "an opportunity to confront, in a fact-finding forum," the theory of guilt on which he or she is convicted. See Cola v. Reardon, 787 F.2d 681, 701 (1st Cir.), cert. denied, 479 U.S. 930 (1986). Hence, if the jurors are instructed that they may convict the defendant only on the basis of a particular theory of the crime, the jury's verdict may not be affirmed on the basis that there was sufficient evidence to establish an alternative theory of the crime. See Dunn, supra at 107 ("appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial").

In Commonwealth v. Mills, 436 Mass. 387, 399 (2002), for example, the defendant was found guilty of three counts of larceny. The defendant's convictions "were based on a theory of traditional larceny because that was the only instruction given to the jury." Id. at 397. This court determined that there was insufficient evidence to convict the defendant of traditional larceny, but that there was sufficient evidence to convict the defendant of larceny by false pretenses. See id. at 394, 397, 399. We held that, because the jury were instructed only on the elements of traditional larceny, the defendant's convictions could not stand. See id. at 399. We reasoned that a "criminal conviction cannot be affirmed on appeal where the jury were not instructed on the elements of the theory of the crime." Id. at 398. See United States v. Luciano-Mosquera, 63 F.3d 1142, 1152 (1st Cir. 1995), cert. denied sub nom. Pagan-San-Miguel v. United States, 517 U.S. 1234 (1996), quoting United States v. Angiulo, 897 F.2d 1169, 1196-1197 (1st Cir.), cert. denied, 498 U.S. 845 (1990) ("appellate determination of sufficiency must be constrained by trial court's instructions; 'otherwise . . . [the appellate court] would be sustaining a conviction on appeal on a theory upon which the jury [were] not instructed below'"); United States v. Cluck, 542 F.2d 728, 731 n.2 (8th Cir.), cert. denied, 429 U.S. 986 (1976) (because "the case was tried on the theory that it was incumbent on the government to prove

wilfulness and intent to escape, . . . that theory became the law of the case").[6]

As we discussed, under rule 25 (b) (2), the judge did not analyze whether the evidence was sufficient to support the arson conviction.  Nonetheless, it was the judge's role, pursuant to

_____

[6] In Commonwealth v. Buttimer, 482 Mass. 754, 756 (2019), in which the defendant was convicted of armed assault with intent to murder, the jury erroneously were instructed that, to convict the defendant, the weapon used to assault the victim had to be "operational."  We affirmed the conviction even though the Commonwealth failed to prove that the weapon used was operational.  See id. at 770-771.  We held that a "jury instruction that 'add[s] elements to the government's burden of proof beyond those required by statute . . . may not become the law of the case' if it is 'patently incorrect.'"  Id. at 766 n.17, quoting United States v. Zanghi, 189 F.3d 71, 79 (1st Cir. 1999), cert. denied, 528 U.S. 1098 (2000).  See Musacchio v. United States, 577 U.S. 237, 243 (2016) ("when a jury instruction sets forth all the elements of the charged crime but incorrectly adds one more element, a sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction").

The circumstances in Buttimer, 482 Mass. at 766 n.17, are distinct from those in Commonwealth v. Mills, 436 Mass. 387, 399 (2002).  Where the appellate court disregards an extraneous element in its sufficiency analysis, the jury nonetheless will have found beyond a reasonable doubt that the remaining elements were present.  See United States v. Inman, 558 F.3d 742, 748 (8th Cir.), cert. denied, 558 U.S. 916 (2009) ("If, for example, a jury is charged that it must find three statutory elements and a fourth element not required by applicable law, that the evidence is insufficient to prove the fourth non-statutory element does not mean that a conviction that is properly supported under the applicable law deprives the defendant of his right to due process").  In Mills, in contrast, had this court affirmed the conviction on the basis of larceny by false pretenses, it would have entertained a theory of the crime that the jury had not found to be true beyond a reasonable doubt.

rule 25 (b) (2), to determine whether the jury's verdict was "against the weight of the evidence."  See Commonwealth v. Doucette, 408 Mass. 454, 456 (1990).  Had the judge analyzed the weight of the evidence according to a general intent theory of the crime, she might have denied the defendant's rule 25 (b) (2) motion on the basis of a theory that the defendant had not had an "opportunity to confront . . . in a fact-finding forum."  See Cola, 787 F.2d at 701.  See also Commonwealth v. Mills, 51 Mass. App. Ct. 366, 373 n.11 (2001), S.C., 436 Mass. 387 (2002), citing Commonwealth v. Longo, 23 Mass. App. Ct. 518, 527 (1987), S.C., 402 Mass. 482 (1988) (it is "manifestly unjust and unlawful to uphold a verdict on a basis not in the minds of the contending parties, the judge, or the jury").  It therefore was reasonable for the judge, in reviewing the evidence, to take into account that the jury had convicted the defendant by reason of specific intent.  See Commonwealth v. Kozubal, 488 Mass. 575, 581 (2021), cert. denied, 142 S. Ct. 2723 (2022), quoting L.L., 470 Mass. at 185 n.27 (judge's decision is abuse of discretion if it "falls outside the range of reasonable alternatives").  We conclude that the judge did not abuse her discretion by applying a specific intent standard as part of her rule 25 (b) (2) review.

e.  Retroactive application of Brown.  In Brown, 477 Mass. at 825 (Gants, C.J., concurring), this court abandoned the

doctrine of constructive malice, whereby felony-murder is an independent theory of liability for murder.  Rather, a conviction of felony-murder now requires a "finding of actual malice."  Id.  We made clear in our decision that the "abolition of felony-murder liability from our common law of murder" applies "only to cases where trial [began] after our adoption of the change."  Id. at 834.  We reasoned that retroactive application of our holding would be unfair to the Commonwealth, because a "felony-murder case might have been tried very differently if the prosecutor had known that liability for murder would need to rest on proof of actual malice.  For instance, a prosecutor might have asked for an involuntary manslaughter instruction if he or she had known that the jury could not rest a finding of murder on felony-murder liability." Id.

Here, the judge provided as one of her reasons for reducing the defendant's verdict that, if the defendant's trial had occurred one and one-half years later, our holding in Brown, 477 Mass. at 825, would have applied, and a finding of malice would have been required to convict the defendant of felony-murder. The judge reasoned that the Commonwealth would not be prejudiced by her retroactive application of Brown because the jury had received instructions on involuntary manslaughter and the Commonwealth had been provided an opportunity to argue that the

defendant committed murder with malice.  The Commonwealth argues that, because we held in Brown that the abolition of constructive malice would only apply prospectively, the judge's consideration of Brown constituted an error of law.

We agree with the Commonwealth.  "When announcing a new common-law rule, . . . there is no constitutional requirement that the new rule . . . be applied retroactively, and we are therefore free to determine whether it should be applied only prospectively."  Commonwealth v. Martin, 484 Mass. 634, 645 (2020), cert. denied, 141 S. Ct. 1519 (2021), quoting Commonwealth v. Dagley, 442 Mass. 713, 721 n.10 (2004), cert. denied, 544 U.S. 930 (2005).  A judge does not have the discretion to supersede our determination that a new rule should be applied prospectively only.  See Commonwealth v. Vasquez, 456 Mass. 350, 356 (2010).  Moreover, even though the jury received instructions on malice and involuntary manslaughter, it is nonetheless possible that the Commonwealth would have tried the case differently had it known that the jury's failure to find malice would justify a reduction in the verdict.  For example, the Commonwealth could have focused its efforts on presenting evidence of malice to the jury, rather than centering its case around establishing that the defendant had committed arson.  See Commonwealth v. Duke, 489 Mass. 649, 658 n.5, 660 (2022) (Brown does not apply retroactively even where jury received

26

instructions on malice and involuntary manslaughter).  In addition, the proximity in time of the defendant's trial to our decision in Brown had no bearing on whether the verdict against the defendant was consonant with justice.  See Commonwealth v. Almeida, 452 Mass. 601, 613 (2008), quoting Rolon, 438 Mass. at 820.

The defendant maintains that the judge did not err, because rule 25 (b) (2) review may be informed by "postverdict developments" in the law.  See Millyan, 399 Mass. at 189.  The defendant cites cases in which this court has allowed a postverdict revision of common law to be considered as part of a posttrial review of the verdict.

In Commonwealth v. Castillo, 485 Mass. 852, 865-866 (2020), this court prospectively amended the factors that a jury must consider to find that a murder was committed with extreme atrocity or cruelty (Cunneen factors).  We held that we would not apply the amended Cunneen factors retroactively to the defendant.  See id. at 866.  Pursuant to our authority under G. L. c. 278, § 33E, however, we reduced the defendant's verdict in part because our prospective revision of the Cunneen factors suggested that a lesser verdict would be more just.  See id. at 867-868.

Similarly, in Commonwealth v. Pring-Wilson, 448 Mass. 718, 720, 720, 731 (2007), a judge granted the defendant a new trial

pursuant to rule 30 (b).  The judge's decision was based on our holding in Commonwealth v. Adjutant, 443 Mass. 649 (2005).  We affirmed, even though Adjutant was released after the defendant in Pring-Wilson had been convicted and our holding in Adjutant was to be applied only prospectively.  See Pring-Wilson, supra at 736-737.

Our decisions in Castillo, 485 Mass. at 867, and Adjutant, 443 Mass. at 667, however, are distinct from our holding in Brown.[7]  In Brown, 477 Mass. at 834, we did not hold simply that the new common-law rule was a prospective change.  We went further and stated that the change would "have no effect on felony-murder cases already tried, including this case."  Id.  We have reiterated this holding in subsequent cases.  See

---

[7] The defendant cites two additional cases, but neither involves the application of a prospective change in the common law.  In Commonwealth v. Alcide, 472 Mass. 150, 167 n.23 (2015), we stated that, in reviewing the defendant's case under § 33E, we were "not unmindful of the concerns that prompted" a prospective change in the rules concerning the admissibility of eyewitness testimony.  We made clear in our decision, however, that our analysis was limited to the prevailing law at the time of trial.  See id. at 165.  In Commonwealth v. Phinney, 446 Mass. 155, 168 (2006), S.C., 448 Mass. 621 (2007), we affirmed a judge's decision to grant a new trial, where the decision was based in part on the police's failure to record the defendant's confession.  This court had held, in a decision that followed the defendant's trial, that "defense counsel is entitled to pursue the failure of the police to record a defendant's statements."  See Commonwealth v. Diaz, 422 Mass. 269, 273 (1996).  We did not, however, characterize our holding in Diaz as a change in the law.  See id.  Furthermore, we did not state in that decision that our holding would be applied only prospectively.  See id.

Commonwealth v. Tate, 486 Mass. 663, 674 (2021); Martin, 484 Mass. at 645-646; Commonwealth v. Phap Buth, 480 Mass. 113, 120, cert. denied, 139 S. Ct. 607 (2018).

Further, in Commonwealth v. Cheng Sun, 490 Mass. 196, 224-225 (2022), we made clear that Brown may not be applied retroactively even in the context of § 33E review. Contrast Castillo, 485 Mass. at 867-868. It follows that the same is true in the context of rule 25 (b) (2) review. See Reavis, 465 Mass. at 891 ("judge considering a motion to reduce a verdict under [rule 25 (b) (2)] may rely on essentially the same considerations as does this court when deciding whether to reduce a verdict to a lesser degree of guilty pursuant to [§ 33E]").

f. Sufficiency of remaining factors. Although the judge's consideration of Brown was an error of law, it does not necessarily follow that her decision to reduce the verdict was an abuse of discretion. The judge did not state expressly in her memorandum of decision that our holding in Brown was necessary to her conclusion that a lesser verdict would be more consonant with justice. Rather, the judge explained that her decision was based on "the combination" of the four factors she considered.

Ordinarily in these circumstances, we might remand to the judge for a reconsideration of her decision in light of our

29

holding.  See Grassie, 476 Mass. at 215-216.  This would provide the judge an opportunity to determine whether the remaining factors she considered on their own warrant a verdict reduction. Cf. Commonwealth v. J.F., 491 Mass. 824, 843 (2023) (remanding case so judge could "expand on his consideration" because he abused his discretion by not discussing factors relevant to his decision).

Here, however, the judge has retired, so we are precluded from employing such a remedy.  See Commonwealth v. Alcide, 472 Mass. 150, 158 n.10 (2015).  While we could remand to another Superior Court judge, see Commonwealth v. Randolph, 438 Mass. 290, 291 n.2 (2002), "[w]e are in as good a position to deal with this matter as would be some other judge," Gaulden, 383 Mass. at 547.  We therefore take it upon ourselves to decide whether the judge's decision to reduce the verdict would have been an abuse of discretion had it been based solely on the other factors considered.  See Commonwealth v. Andrade, 488 Mass. 522, 544-545 (2021).

We conclude that, had the judge's reasoning not included her analysis of Brown, the verdict reduction would not have been an abuse of discretion.  See Sokphann Chhim, 447 Mass. at 381. The weakness of the evidence showing that the defendant had the intent to burn a dwelling, in addition to mitigating circumstances, constituted a reasonable basis for the judge's

conclusion that a verdict of involuntary manslaughter was more consonant with justice than a verdict of felony-murder in the second degree. See Commonwealth v. Dowds, 483 Mass. 498, 513 (2019) (mitigating circumstances); Rolon, 438 Mass. at 821-822 (weakness of evidence).

As the judge noted, only minimal evidence was presented at trial to suggest that the defendant intended to burn the dwelling at the time she set the fire. See Lyons, 444 Mass. at 292. Indeed, there was little reason to believe that the defendant wanted to burn the apartment in which she lived; the apartment housed all of the defendant's possessions, as well as the defendant's two year old child, for whom the defendant was by all appearances an attentive and caring mother. See Pagan, 471 Mass. at 545 (judge may consider absence of motive under rule 25 [b] [2] review). Contrast Choy v. Commonwealth, 456 Mass. 146, 150-151, cert. denied, 562 U.S. 986 (2010) (rational jury could find defendant had committed arson in part because there was evidence that defendant had motive to collect on life insurance policy).

In addition, the judge found that, due to her cognitive limitations, the defendant likely did not comprehend the risk of the fire spreading to the dwelling. See Pagan, 471 Mass. at 544 (reduction in verdict affirmed in part because judge credited doctor's "testimony that the defendant lacked the cognitive

capacity to premeditate the killing"). DiCataldo testified that the defendant's cognitive limitations impaired her ability to comprehend fully the consequences of her actions, and DiCataldo's report further concluded that the defendant was prone to "impulsive, poorly planned and contemplated behavior." See Commonwealth v. Concepcion, 487 Mass. 77, 95, cert. denied, 142 S. Ct. 408 (2021) (verdict reduced in part because "expert testimony presented at trial suggested" that defendant "functioned at the level of someone who was nine or ten years old"). The judge further found, on the basis of DiCataldo's report, that the defendant's mental disorder also likely diminished her capacity to understand the risks entailed by her action.

The judge acknowledged that, once the fire had started, the defendant did nothing either to report or to extinguish it. On direct review, this court stated that the jury reasonably could have inferred from this evidence "that the defendant acted with the requisite specific intent at the time she set the fire." Pfeiffer, 482 Mass. at 123. As we discussed, however, the judge was not required to draw this same inference as part of her rule 25 (b) (2) review. See Reavis, 465 Mass. at 891. Instead, the judge reasoned that the defendant's failure to act was evidence that the defendant had developed the requisite intent only after the fire had started.

Because the judge's decision to reduce the verdict was sufficiently supported by the weakness of the evidence and mitigating circumstances, we conclude that the verdict reduction was not an abuse of discretion.[8]

g. Timing of rule 25 (b) (2) motion. At oral argument, the Commonwealth argued that rule 25 (b) (2) grants a judge the authority to reduce a verdict only before direct appellate review. The Commonwealth "did not make this argument in its brief; therefore, it is waived." Board of Registration in Med. v. Doe, 457 Mass. 738, 743 n.12 (2010). Accordingly, we do not address the issue.

3. Conclusion. Although the judge's consideration of Brown was an error of law, we nonetheless conclude that the reduction in the defendant's verdict was not an abuse of discretion. We therefore affirm the order granting in part the defendant's motion for a new trial or, in the alternative, for a reduction in the verdict.

So ordered.

---

[8] Because we conclude, on the basis of these two factors, that the reduction in the verdict was not an abuse of discretion, we do not address the Commonwealth's argument that the judge was directly estopped from considering her erroneous supplemental instruction to the jury.